IN THE MATTER OF: D. MONTGOMERY, A MINOR FEMALE CHILD; S. MAXWELL, A MINOR FEMALE CHILD; A. MAXWELL, A MINOR FEMALE CHILD; AND D. MAXWELL, A MINOR MALE CHILD

No. 8211DC596

(Filed 7 June 1983)

1. **Parent and Child § 1— termination of parental rights—not supported by evidence**

   In a proceeding to terminate parental rights, the trial court erred in terminating parental rights due to neglect where the evidence tended to show that the parents kept most of the scheduled visits with their children after they were placed in foster care; that any failures were due to legitimate transportation problems and were usually accompanied by a long-distance telephone call to inform the Department of Social Services of their problem; that the parents have made efforts to use their meager financial resources, with guidance of the Department of Social Services, to improve their physical environment, despite the lack of any showing that it was inadequate or detrimental; that the children are healthy and emotionally well-adjusted, evidence of the parents' ability to provide them with adequate physical, emotional and psychological nurturing; and that the family unit, though not legitimate, was held together in the face of abject poverty by bonds of love and affection that can neither be created nor buttressed by wealth or the legal act of marriage. There are two aspects of the parent-child relationship that are important in any proceeding to terminate: (1) the economic aspect of providing for the physical needs of the child, and (2) the intangible aspect of providing for the emotional and psychological needs of a child. The above evidence fell short of satisfying the "clear, cogent, and convincing evidence" standard of proof required by *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982) and G.S. 7A-289.30(e), in that it failed to show that the physical and economic needs of the children were not adequately met and it failed to show that the intangible non-economic needs of the children were not met.

**2. Parent and Child § 1— termination of parental rights—finding that father failed to pay reasonable portion of cost of support of children and had ability to do so—not supported by evidence**

> The trial judge erred in finding that respondent failed to pay a reasonable portion of the amount of child care and that he had the ability to pay that amount where the judge's conclusion was supported by simple findings of fact which disclosed: (1) the amount that was to be paid, (2) the amount of the respondent-appellant's earnings and the fact that he was employed, and (3) that the payments were not made. Such findings did not establish what the needs of the children were.

APPEAL by respondents from *Greene (Edward), Judge.* Judgment entered 8 January 1982 in District Court, HARNETT County. Heard in the Court of Appeals 20 April 1983.

These four actions involve a petition for termination of parental rights of respondent-appellants in their four minor children pursuant to Article 24B, Chapter 7A, North Carolina General Statutes. From an order granting the petition to terminate parental rights in each case, guardian ad litem appealed.

*Edward H. McCormick, for petitioner-appellee.*

*O. Henry Willis, Jr., for respondent-appellants.*

HILL, Judge.

These petitions to terminate parental rights were brought by the Harnett County Department of Social Services. Guardians ad litem were appointed for each of the minor children and the parents. At the hearing on termination, the judge, from the admissions in the pleadings and the evidence, made findings of fact which he states are based on clear, cogent, and convincing evidence.

Evidence at the hearing in this matter tended to show the following:

Geraldine Montgomery is the mother of the children and David Maxwell is the father. The parents are not married. Each child is in the custody of the Harnett County Department of Social Services. At the time of the termination hearing, the children were 10, 9, 7 and 5 years old.

The children lived with the parents until they were removed by the Harnett County Department of Social Services in Septem-

ber 1980. During the period between 12 October 1979 and 14 August 1980, the family lived in a three room house with a bathroom and running water, but very little furniture. There was one bed in the house and a mattress on the floor. The parents separated in August 1980, but have since resumed living together in the family home.

The father, at the time of the hearing, had been employed as a welder and general handyman on a farm, and earned about $120.00 per week. The mother kept house but had been ill and was suffering from mental problems which caused her to see things and to become upset when she failed to take her medicine. She has had a hysterectomy, but felt as if she was pregnant. Both parents are moderately retarded.

The children are physically healthy and emotionally well-adjusted. The children were fed and clothed by the parents, who also attended to their medical needs. The family home was clean, the mattress on which the children slept was supplied with sheets, blankets and pillows.

Those children of school age had poor school attendance records during the 1979-80 school year and earned unsatisfactory grades. After being placed in the custody of the Department of Social Services their attendance and performance in school showed improvement.

On 5 December 1980, the court adjudged the children neglected and placed them in the custody of the Harnett County Department of Social Services. The neglect case was reviewed on 6 March 1981 and again on 16 October 1981. The parents had not responded to requests by the Department of Social Services to improve the family living quarters. The father, under order of the court to pay $30.00 per week for the support of his children, had paid only $90.00 from 6 March 1981 to 8 January 1982, or three of 45 payments. He lost a considerable amount of money on a failed attempt at hog farming.

While the children were in foster care, the parents attempted to attend every scheduled visit at the Department of Social Services. Failure to attend scheduled visits was due to lack of transportation.

At the time of the termination hearing, some progress had been made. The mother was accepting the help of the Department of Social Services to improve her homemaking skills and was attending counseling sessions for her mental problems. Additional beds had been provided for the children.

Respondent-appellants' several assignments of error ask us to consider, first, whether the findings of fact made by the trial judge are supported by "clear, cogent, and convincing evidence" and, second, whether those findings of fact support the conclusions of law on which the trial judge's order terminating respondent-appellants' parental rights in their children is based.

G.S. 7A-289.32 provides that, upon a finding of one or more of the grounds listed therein, the court shall terminate parental rights. The trial court in this case based its order on the following statutory grounds:

(1) that the children were neglected within the meaning of 7A-278(4) (now 7A-517(21)). G.S. 7A-289.32(2).

(2) that the children were in the custody of a county department of social services for the six months preceding the filing of the petition and the parents have refused to pay a reasonable portion of the child care expenses. G.S. 7A-289.32(4).

In the case before us, G.S. 7A-289.32(2) was the sole basis for the trial court's order terminating the parental rights of the mother and G.S. 7A-289.32(2) and (4) were the basis for the termination of the father's parental rights.

The conclusion of neglect with respect to both parents is based on findings which are summarized as follows: (1) poor school attendance and poor scholastic performance; (2) inadequate and crowded living conditions and failure of the parents to improve them; (3) moderate retardation of both parents contributing to an inability to properly care and provide for the children, including sending them to school.

With respect to the mother, the court's findings of fact are summarized as follows:

(1) she believes that someone or something is trying to get inside her; (2) she believes she has been pregnant for 14 months,

despite the fact that she has had a hysterectomy; (3) she gets nervous and angry at her children when she forgets to take her prescribed medicine.

With respect to the father, the court found the following (summarized): that he made only three of 45 scheduled payments to the Department of Social Services at the time the petition was filed, despite the fact that he has been gainfully employed during the time.

## I. a.

In our consideration of this case, we take note of the due process evolution that has taken place in the area of parental rights. This evolution began with the case of *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 2d 551 (1972). *Stanley* concerned the rights of a father in his illegitimate children by a mother who had since died. The Court's consideration of these rights involved an extensive exploration of the interest of parents in their children generally. The *Stanley* Court found that interest to be far more important and substantial than " 'liberties which derive merely from shifting economic arrangements.' " *Id.* at 651, 92 S.Ct. 1208, 31 L.Ed. 2d 551, *quoting Kovacs v. Cooper*, 336 U.S. 77 at 95, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring). The right to conceive and raise one's children was found to be essential and, as such, to warrant deference and protection under the due process clause of the Constitution. *Id.* A later Supreme Court case, *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed. 2d 323 (1979), considered the function of the evidentiary standard of proof in relation to due process. The Court there found that due process required the "clear and convincing" standard of proof when the interest was, as with parental rights, particularly important and more substantial than an economic interest. *Id.* at 424, 99 S.Ct. 1804, 60 L.Ed. 2d 323.

## b.

Professor Lee notes that the North Carolina statutes on parental rights termination, which govern the action before us, were rewritten to satisfy the constitutional requirements of *Stanley*. Lee, N.C. Family Law § 292 (1981). In 1979, the North Carolina Legislature amended G.S. 7A-289.30(e) to require, consistent with *Stanley* and *Addington*, that "[a]ll findings of fact be

based on clear, cogent and convincing evidence." G.S. 7A-289.30(e) (Cum. Supp. 1979). The foresight of the State Legislature was borne out when, in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982), the United States Supreme Court found the "clear and convincing evidence" standard of proof to be required in proceedings to terminate parental rights.

c.

North Carolina courts have had reference to *Santosky* in at least two cases reviewed for the sufficiency of evidence under the "clear, cogent, and convincing" standard of proof. *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127 (Carlton, J., dissenting), *reh. denied*, 306 N.C. 565, --- S.E. 2d --- (1982), *appeal dismissed sub nom. Moore v. Dept. of Social Services*, 103 S.Ct. 776, 74 L.Ed. 2d 897, --- U.S. --- (1983); *In re Allen*, 58 N.C. App. 322, 293 S.E. 2d 607 (1982). In those cases, the courts affirmed the finding of neglect with little comment on the due process implications of *Santosky. But see In re Moore, supra* (Carlton, J., dissenting). The matter now before us provides the first opportunity we have had to give full consideration to the *Santosky* decision and its implications for our trial courts.

II. a.

The United States Supreme Court cases, discussed *supra*, limit their consideration to matters of procedural due process. However, the procedural protection and deference accorded by *Santosky* to parental rights in children belie their substantive importance and compel us to emphasize and clarify that importance in the present context. *Santosky* did not attempt to state specifically what must be shown and what quantum of proof must exist to justify a termination of parental rights. Nevertheless, the Court appeared to endorse an approach that would take into account more than physical or economic factors; an approach that would reflect some consideration by the trial judge of all the circumstances of the parent-child relationship in each individual case. The Court noted that termination proceedings "often required the fact finder to . . . decide issues difficult to prove to a level of absolute certainty, such as lack of parental motive, absence of affection between parent and child, and failure of parental foresight and progress." *Id.* at 769, 102 S.Ct. 1388, 81 L.Ed. 2d 599. *Santosky* implicitly demands serious consideration

of the unquantifiable attributes of the parent-child relationship that warrant its protected status under the Due Process clause.

This begs the question of what those unquantifiable attributes are and how their existence is to be shown or disproved to the level of certainty required by *Santosky*. North Carolina defines a neglected child as:

> A juvenile who does not receive proper care, supervision, or discipline from his parent . . .; or who has been abandoned; or who is not provided necessary medical care or other remedial care as recognized under State Law, or who lives in an environment injurious to his welfare . . . .

G.S. 7A-516(21). This definition comports with the majority view. *See* C.J.S., Infants § 37. The terminology of the statute is sufficiently broad to allow interpretation by the courts and the engrafting of some requirement that due consideration be given to non-economic or non-physical indicia. Courts in other jurisdictions have interpreted similar definitions of neglect to include denial of affection, guidance, and parental consideration. *See id.* North Carolina courts, however, have had little experience with the statutory definition of neglect and consequently have not broadened it in that direction. *See, e.g., In re McMillan*, 30 N.C. App. 235, 226 S.E. 2d 693 (1976).

Our courts have had only three opportunities to consider the definition of neglect under the recently elevated standard of proof. *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127, *reh. denied*, 306 N.C. 565, --- S.E. 2d --- (1982); *appeal dismissed sub nom. Moore v. Dept. of Social Services*, 103 S.Ct. 776, 74 L.Ed. 2d 897, --- U.S. --- (1983). *In re Smith*, 56 N.C. App. 142, 287 S.E. 2d 440, *cert. denied*, 306 N.C. 385, 294 S.E. 2d 212 (1982); *In re Allen*, 58 N.C. App. 322, 293 S.E. 2d 607 (1982). Of these cases, only *Allen* and *Moore* were apparently cognizant of *Santosky*. Without reciting the facts, it was clear in each case that the conclusion of neglect was supported by evidence tending to show that the parents' action or inaction had resulted in obvious physical or emotional damage to the child, that the parents did not have a sufficient understanding of the needs of the children to care for them adequately, or that the family relationship, where one existed, was unstable at best. *But see In re Moore, supra* (Carlton, J., dissenting).

b.

**[1]** We do not dispute the importance of such outward manifestations of neglect. The cases cited above are testament to the fact that such evidence can be dispositive and we do not question the holdings in them. Rather, we seek to call attention, consistent with our reading of *Santosky v. Kramer,* to the additional implications that such evidence, or the lack of it, has with respect to the parent-child relationship and proceedings to sever it.

Evidence that tends to indicate that the child's ascertainable physical needs are neglected can also be of such clarity and degree as to permit the inference that the parents' relationship with that child lacks the essential ingredients of love, affection, and parental regard that distinguish the relationship from and raise it above an economic transaction. There are thus two aspects of the parent-child relationship that are important in any proceeding to terminate it: (1) the economic aspect of providing for the physical needs of a child, and (2) the intangible aspect of providing for the emotional and psychological needs of a child. A child may be dependent on his parents as much for the former as for the latter. Commentators have noted that, in addition to being responsible for minimal care, the best interest of the child demands the provision of an environment of love, affection and consideration. Wald, State Intervention on Behalf of "Neglected" Children: A Search for Realistic Standards, 27 Stan. L. Rev. 958 at 990 (1975).

The parent has a fundamental interest in conceiving and raising his or her children. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 2d 551 (1972). This interest is attended by the parent's common law obligation of providing for the welfare of the child during its dependency to the extent that he is able to do so. *See generally,* Lee, N.C. Family Law § 229 (1981) & n.1. This obligation consists not only of meeting the child's economic needs but has more recently also come to include providing for the intangible emotional and psychological needs as well. *Wald, supra* at 990. The interest of the State, as *parens patriae,* is in promoting and preserving the welfare of the child. *Santosky v. Kramer,* 455 U.S. at 766, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982); *see also,* G.S. 7A-289.22 *and Lee, supra* at § 229. Since a large part of a child's welfare involves the meeting of intangible needs,

the scope of the State's interest is not limited to enforcing the parents' obligation for economic support, but logically extends to the non-economic aspects of the parent-child relationship as well. North Carolina courts have recognized this interest, albeit not in the context of parental rights termination proceedings. *See In re Peal*, 305 N.C. 640, 290 S.E. 2d 664 (1982); *Blackley v. Blackley*, 285 N.C. 358, 204 S.E. 2d 678 (1974); *Steele v. Steele*, 36 N.C. App. 601, 244 S.E. 2d 466 (1978). In this regard, we note that the option of not terminating the parent-child relationship is expressly reserved to the court, even where sufficient legal grounds exist for doing so. G.S. 7A-289.31(b).

It follows from all of this that the child has a powerful interest in receiving the benefits of both aspects of the parent-child relationship. The range of the non-economic benefits to be derived from that relationship can vary on a case by case basis. Cases and commentators, however, emphasize the importance of the family environment for the provision of these intangibles. *See Wald, supra, and* C.J.S., Infants § 37 and cases cited therein. Such benefits include, but are not limited to: religious education, Am. Jur. 2d, Infants § 50, the provision of an environment that allows for the development of emotional maturity as well as the formulation of social and moral values, *Wald, supra,* and love, affection and parental consideration, C.J.S., Infants § 37.

Providing for the non-economic needs of a child as an essential ingredient of the parent-child relationship is more difficult to mandate legally than the provision of economic and physical necessities. Likewise, the neglect of this aspect is more difficult to prove. Its importance, however, is not thereby diminished and it warrants serious consideration by the courts when the question of neglect is before them. In cases like *Moore, Allen,* and *Smith,* cited above, the neglect of the non-economic, intangible needs of the children is evidenced by the degree of economic and physical neglect actually shown. While this is often the case, a finding of physical neglect does not perforce entail the inference that the non-economic aspects of the parent-child relationship are also lacking.

III.

The case now before us invites comparison with *Moore, Allen,* and *Smith.* Even if the evidence tends to show that the

physical and economic needs of the children were not adequately met, and we are not sure that it does, to infer from this evidence alone that the intangible non-economic needs of the children were not met falls short of satisfying the "clear, cogent, and convincing evidence" standard of proof required by *Santosky v. Kramer* and our statute. Not only is the evidence insufficient under the required standard of proof to show neglect to the same degree as in the cases mentioned above, there is ample evidence to support contrary findings. Respondent-appellant Maxwell testified that he built fires in the morning to warm the house for his family and that he borrowed money and walked to the store to put food on the table. He testified that he recognized the value of education for his children and wanted them to attend school. Maxwell did not abuse his children; his discipline consisted of admonitory words with no resort to violence. The poverty of the respondent-appellants is at least partially due to a desire to be self-reliant and not dependent on public assistance. Respondent-appellant Maxwell's failed venture into hog farming, while it indicated a lack of business judgment, was nonetheless rooted in a desire to better provide for his family.

Testimony from respondent-appellant Montgomery, the mother, indicated no inability to properly look to the needs of her children. She knew to call for medical help when her son cut his foot. She cooked for her family, washed the clothes, and dressed the children. Her failure to compel their regular attendance at school, which we do not condone, was at least partially attributable to her illness and not due to any failure to recognize the value of education. Ms. Montgomery has accepted help from the Department of Social Services to improve her skills as a homemaker and has attended counseling sessions for her mental problems, with the hope of having her children returned.

The respondent-appellants kept most of the scheduled visits with their children after they were placed in foster care; any failures were due to legitimate transportation problems and were usually accompanied by a long distance telephone call to inform the Department of Social Services of their problem. The parents have made efforts to use their meager financial resources, with the guidance of the Department of Social Services, to improve their physical environment, despite the lack of any showing that it was inadequate or detrimental. The children are healthy and

emotionally well-adjusted, evidence of the parents' ability to provide them with adequate physical, emotional and psychological nurturing. Lastly, the family unit, though not legitimate, is held together in the face of abject poverty by bonds of love and affection that can neither be created nor buttressed by wealth or the legal act of marriage.

It is this evidence, considered in the light of *Santosky v. Kramer* and aided by the able argument of counsel for respondent-appellants, that persuades us to the result in this case. As *Santosky* teaches, termination of parental rights is an extreme remedy. 455 U.S. at 759, 102 S.Ct. 1388, 71 L.Ed. 2d 599. One commentator has recommended invocation of termination only in those cases where the child has suffered or is likely to suffer serious physical or emotional damage. *Wald, supra* at 1008. The facts on which the trial court's conclusion of neglect was based are supported in part by psychological tests and statistical inferences tending to show that moderately retarded adults, like respondent-appellants here, lack the fundamental capacity to care and provide for others. Such evidence has its value, but that value is significantly reduced in the face of respondent-appellants' evidence tending to show the direct opposite. We cannot say what quantum of proof would be sufficient in all cases to meet the "clear, cogent, and convincing" standard but the evidence here emphatically does not. To say that the facts here were supported by sufficient evidence and, on that basis, to terminate respondent-appellants' parental rights, flies in the face of due process and brooks an intolerable intrusion by the government into the private affairs of citizens whose rights it exists to protect.

Evidence of physical and financial neglect is certainly germane and may be controlling. It must be kept in mind, however, that the State has an interest in promoting and preserving all aspects of the welfare of a particular child. Hence, it is incumbent upon the court to determine whether love, affection, and the other intangible qualities to be found in a family relationship actually exist, along with the findings otherwise required. Where there is no evidence that the child's intangible needs are met, the court should so find. Where there is such evidence, it must be clear from the findings of fact that the court gave the evidence serious consideration. In an order terminating parental rights, it must be clear that the court considered all of the competent

evidence but determined in its discretion that the child's needs were *so insufficiently addressed in the family situation that the* total welfare of the child would best be served by legal severance of the parent-child relationship. We conclude that the trial court's order in this case, insofar as it is based on a conclusion of neglect, must be vacated.

## IV.

[2] Respondent-appellant Maxwell, the father, next challenges the trial judge's conclusion that he has not paid a reasonable portion of the costs of caring for the children and that he had the ability to pay that amount. Petitioner-appellee correctly points out that the real question presented by respondent-appellant's argument is whether the conclusion is supported by the findings. We hold that it is not.

*In re Biggers,* 50 N.C. App. 332, 274 S.E. 2d 236 (1981), likened the determination of the amount to be paid for the support of children in foster care to one for the proper amount of child support in divorce cases. *Id.* at 341, 274 S.E. 2d at 242. As such, *Biggers,* relying on *Coble v. Coble,* 300 N.C. 708, 268 S.E. 2d 185 (1980), held that the "determination must be based upon an interplay of '(1) the amount of support necessary to' meet the reasonable needs of the child and, '(2) the relative ability of the parties to provide that amount.'" *In re Biggers, supra,* at 341, 274 S.E. 2d at 242, quoting *Coble v. Coble, supra,* at 712, 268 S.E. 2d at 189. *Coble* held that the trial judge's conclusions as to the amount required for support and the ability to pay it must be based upon "factual findings specific enough to indicate to the appellate court that the judge below took 'due regard' of the particular 'estates, earnings, conditions [and] accustomed standard of living' of both the child and the parents." *Coble v. Coble,* 300 N.C. at 712, 268 S.E. 2d at 189.

Our careful review of the record on appeal reveals that the trial judge's conclusion is supported by a single finding of fact which discloses: (1) the amount that was to be paid, (2) the amount of the respondent-appellant's earnings and the fact that he was employed, and (3) that the payments were not made. This is not sufficient to indicate to us that due regard was taken of the particular items specified in *Coble, supra.* Specifically, the findings do not establish what the needs of the children are. Without this

information, it is impossible to determine what a reasonable portion of the amount needed for their support would be. The trial judge's conclusion that respondent-appellant failed to pay a reasonable portion of the amount of child care and that he had the ability to pay that amount is therefore vacated.

The judgment entered in this case is vacated and the cause remanded for further consideration and disposition in accordance with the guidelines set forth herein.

Vacated and remanded.

Judges JOHNSON and PHILLIPS concur.