IN THE MATTER OF: ANGEL LA'STAR JOHNSON, A MINOR CHILD, DEPART-MENT OF SOCIAL SERVICES v. SYLVIA ANN JOHNSON, MOTHER, AND WILLIE JOHNSON, JR., FATHER

No. 8326DC841

(Filed 18 September 1984)

1. **Parent and Child § 1— termination of parental rights—custody and support—insufficiency of evidence**

The trial court erred in ruling that parental rights should be terminated on the grounds that the parents had willfully left the child in foster care for more than 2 consecutive years without taking certain corrective actions and that the parents had failed to provide any support for the child for 6 months preceding the action, since the mother had custody of the child 18 months before the termination proceeding, and since the trial court made no finding that the parents had the ability to pay any amount greater than zero toward the cost of child care. G.S. 7A-289.32.

2. **Parent and Child § 1— termination of parental rights—neglect—sufficiency of evidence**

Evidence was sufficient to support the trial court's finding that a child was neglected and that finding supported its conclusion that parental rights should be terminated where the evidence tended to show that the child had received treatment for scalding, a broken bone, and a head injury; the parents failed to make progress in correcting their problems between 1979, when it was originally stipulated that the child was neglected, and 1982, when the order terminating parental rights was entered; marital difficulties between the parents persisted; the child was placed in the mother's custody on a trial basis, and there were three abuse or neglect referrals during the trial placement; on one occasion the child had bruises for which the mother gave conflicting explanations; the parents failed to demonstrate a commitment to regaining custody in their interactions with the department of social services and other service agencies; and the parents failed to pay any support in the past six months. G.S. 7A-517(21).

APPEAL by respondents from *William G. Jones, Judge.* Judgment entered 3 December 1982 in District Court, MECKLENBURG County. Heard in the Court of Appeals 4 May 1984.

*Randall W. Lee for respondent appellant Sylvia Ann Johnson.*

*Hamel, Hamel & Pearce, by Richard A. Elkins, for respondent appellant Willie Johnson, Jr.*

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski, for petitioner appellee Mecklenburg County Department of Social Services.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Max E. Justice, guardian-ad-litem for the minor child appellee.*

BECTON, Judge.

I

This is a termination of parental rights case.

The minor child Angel Johnson was born in February 1979, the second child of Willie Johnson, Jr. and Sylvia Ann Johnson. Following three incidents, after which Angel Johnson received treatment for scalding, a broken bone, and a head injury, the Mecklenburg County Department of Social Services (DSS) filed neglect petitions as to Angel and her older sister in July 1979. Hearings in October and December 1979 resulted in the voluntary dismissal of the petition as to the older child, but also in a stipulation and ruling that Angel Johnson was a neglected child. This adjudication arose from the above physical abuse and from a pattern of discord and aggression between the parents. DSS obtained temporary custody; the parents agreed to participate in counselling and parent training, as well as to pay child support.

A review hearing took place in June 1980, and the court found that the parents were making satisfactory progress and that it would serve the best interest of the child for custody to be returned to her parents. Since the child was to have heart surgery shortly thereafter, however, the court did not order transfer of custody.

In November 1980, at a second review hearing, the court found that although unsupervised visits with the parents had gone well, the parents had recently separated. The separation caused domestic instability and thus interrupted the parents' joint efforts to resume full custody. The court directed trial placement solely with the mother, to begin in January 1981.

During the trial placement, the father moved back in with the mother, and they resumed their pattern of cohabitation, discord, separation and reconciliation. The mother missed numerous appointments for parent counselling and child therapy. The child was occasionally left with relatives. On one occasion the child had heavy bruises and scratches. At other times, relatives noted that she was wet, cold, and poorly clothed. The court concluded, at hearing in July 1981, that the "good faith trial placement" had failed and ordered DSS to resume custody, although it found that the home of the parents should still be considered as a possible permanent home. The court ordered a psychological exam for both parents.

The court conducted another review hearing in November 1981. Based on the psychological evaluations, which indicated that additional counselling and training were needed but gave no prognosis as to the likely success thereof, and based on the past history of marital instability, the court concluded that it could no longer look to the natural parents as custodians "in the near term." The court ordered that custody be awarded to the child's paternal aunt and uncle, and indicated that the parents must show "positive results" in order to be considered again as active participants in the permanent plan.

The foster caretakers notified the court in April 1982 that they no longer wanted custody. They had experienced continual difficulty in controlling the child, particularly after visits with the mother, when the child would cry for her mother. In addition, several incidents had occurred reflecting tension with the mother's relatives and the mother herself. Two weeks later, DSS filed a petition to terminate the parents' rights. In response, both parents requested custody as individuals. After a lengthy hearing, the court terminated their parental rights. It found that although the parents had originally made sufficient progress toward regaining custody to impress the court at times, the court was more impressed by the number of relapses into discord and failures to cooperate with community services. The most recent separation had occurred only five days before the commencement of hearing. The court adopted the findings supporting its original adjudication of neglect in 1979. In addition, the court found that the parents had failed to meet their child support obligations. Concluding that these matters had been shown by clear, cogent,

and convincing evidence, the court terminated the parents' rights. They appeal.

## II

The parents appeal *in forma pauperis*. However, both failed to file their affidavits within ten days from the expiration of the session of court, as required by N.C. Gen. Stat. § 1-288 (1983). The provisions of the statute are mandatory and jurisdictional, and the purported appeal is subject to dismissal. *Anderson v. Worthington*, 238 N.C. 577, 78 S.E. 2d 333 (1953). DSS and the guardian have moved to dismiss the appeal. Since we, in our discretion, choose to treat the appeal as an application for writ of certiorari and allow same, the motion is moot and we proceed to the merits. N.C. Gen. Stat. § 7A-32(c) (1981); 4A N.C. Gen. Stat. App. 2A, N.C.R. App. P. 21(a) (Supp. 1983).

## III

Parental rights may be terminated in North Carolina under N.C. Gen. Stat. §§ 7A-289.31, -289.32 (1981). G.S. § 7A-289.32 (1981) lists seven grounds which may support an order of termination; finding any one of them will authorize a court to terminate the parents' rights. G.S. § 7A-289.31(a) (1981); *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127 (1982), *appeal dismissed sub nom. Moore v. Guilford County Dep't of Social Services*, 459 U.S. 1139, 74 L.Ed. 2d 987, 103 S.Ct. 776 (1983). All such findings must, however, be based on "clear, cogent, and convincing evidence." N.C. Gen. Stat. § 7A-289.30(e) (1981).

[1] In its order of termination the trial court ruled that DSS had properly proved the following statutory grounds for termination:

(2) The parent has abused or neglected the child.

(3) The parent has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made within two years in correcting those conditions which led to the removal of the child for neglect, or without showing positive response within two years to the diligent efforts of a county department of social services, a child-caring institution or licensed child-placing agency to encourage the parent to strengthen the paren-

tal relationship to the child or to make and follow through with constructive planning for the future of the child.

(4) The child has been placed in the custody of a county department of social services, a licensed child-placing agency, or a child-caring institution, and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child.

G.S. § 7A-289.32 (1981).

Since it is undisputed that the mother had the child on trial placement up to July 1981, the court clearly erred as a matter of law in finding ground (3) in December 1982. The fact that DSS retained legal custody during the trial placement is irrelevant; the controlling language is "foster care." Clearly "foster care" does not include trial placement with the natural parents. With respect to ground (4), the trial court made no finding that the parents had the ability to pay any amount greater than zero toward the cost of care. Such findings are required for orders based on that ground. *In re Moore,* 68 N.C. App. 300, 314 S.E. 2d 580 (1984); *In re Bradley,* 57 N.C. App. 475, 291 S.E. 2d 800 (1982). We therefore may affirm only if the trial court properly found ground (2), neglect.

## IV

[2]   A court may terminate parental rights upon a finding that the parent has neglected the child. G.S. § 7A-289.32(2) (1981). The child is deemed neglected if found to be a neglected child within the meaning of N.C. Gen. Stat. § 7A-517(21) (1981), which, as relevant here, defines a neglected child as one who "does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; . . . or who lives in an environment injurious to his welfare. . . ." *See In re Allen,* 58 N.C. App. 322, 293 S.E. 2d 607 (1982). These provisions do not violate constitutional standards of equal protection or definiteness. *In re Huber,* 57 N.C. App. 453, 291 S.E. 2d 916, *disc. rev. denied and appeal dismissed,* 306 N.C. 557, 294 S.E. 2d 223 (1982).

The stipulation, made in October 1979, that the minor child was neglected, apparently constituted significant evidence of

neglect, and it should have—the inference of violent conduct toward the child resulting in a fractured right arm and a subdural hematoma understandably concerned the trial court. The courts of this State have consistently recognized stipulations as binding judicial admissions, which dispense with and substitute for the necessity of legal proof. *Hargus v. Select Foods, Inc.*, 271 N.C. 369, 156 S.E. 2d 737 (1967); *Ritch Realtors, Inc. v. Kinard*, 45 N.C. App. 545, 263 S.E. 2d 38, *disc. rev. denied*, 300 N.C. 375, 267 S.E. 2d 677 (1980). Stipulations ordinarily remain in effect through the duration of the controversy. *In re Ordinance of Annexation No. 1977-4*, 296 N.C. 1, 249 S.E. 2d 698 (1978).

But that's not all. The trial court, in determining to terminate parental rights, reviewed the entire file which, commendably, included no less than twelve meticulously drafted orders notably detailing the parents' lack of progress between the initial juvenile petition in 1979 and the order terminating parental rights in 1982.

In addition, the trial court also adopted its findings made in 1979 regarding the physical injuries sustained by the child. Equally important, it also found: that the marital difficulties between the parents had persisted; that there were three abuse or neglect referrals during the trial placement; that on one occasion the child had bruises for which the mother gave conflicting explanations; that the parents had failed to demonstrate a commitment to regaining custody in their interactions with DSS and other service agencies; and that they had failed to pay any support in the past six months. Even excepting "marital difficulties" from our consideration, on balance the evidence is nevertheless sufficient to support the trial court's finding that the parents had neglected the child, particularly in light of our Supreme Court's recent decision in *In re Ballard*, No. 485A83, filed 28 August 1984. The *Ballard* Court held that

> evidence of neglect by a parent prior to losing custody of the child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights . . . [as long as the trial court does not erroneously treat] the prior adjudication of neglect standing alone as binding upon it and as determinative on the issue of neglect at the time of the termination proceedings.

*In re Ballard,* slip opinion at pp. 8, 9, 311 N.C. 708, 715, 319 S.E. 2d 227, 232 (1984). *See also In re Montgomery,* 311 N.C. 101, 316 S.E. 2d 246 (1984) (prior adjudication of neglect, separation, other factors sufficient).

In this case, there was ample evidence that the child did not receive "proper care" and lived in an environment "injurious to her welfare" at the time of the original adjudication of neglect. Equally important, there was evidence that the child did not receive proper care during trial placement (three abuse or neglect referrals) and that the unstable environment would persist in that her parents "failed to maintain a sustained commitment to Angel Johnson . . . [and] have been unwilling to make the changes in their lifestyle and to obtain the skills which the court feels would be necessary for them to have their child returned." Termination order, finding of fact no. 7. Indeed, the father never made himself available for counseling, and the mother's attendance at counseling sessions, after June 1980, were sporadic even though she worked two blocks from the counselor's office and the appointments were scheduled after the mother's working hours. Following *Ballard,* we conclude that this constituted clear, cogent, and convincing evidence of neglect, and the trial court accordingly complied with the statutory provisions in terminating parental rights for neglect.

Following loss of custody, parents likely will not have extensive contact with the child; therefore, new evidence of neglect will, of course, be limited. The more diligent, and hence time-consuming, the efforts of DSS to restore the family unit, the less new evidence there will be. We hesitate to adopt a rule that would *encourage* DSS to accelerate termination proceedings. The General Assembly has clearly expressed its intent that, to the contrary, unnecessary severance of the family bond is to be avoided. N.C. Gen. Stat. § 7A-289.22(2) (1981). In this case, there was new evidence and new findings. A trial placement was attempted, and, as the trial court found, it deteriorated.

The parents, relying on our decision in *In re Montgomery,* 62 N.C. App. 343, 303 S.E. 2d 324 (1983), *rev'd,* 311 N.C. 101, 316 S.E. 2d 246 (1984), contend that there was substantial evidence of love and affection, particularly between mother and child, and that the trial court erred in failing to address this evidence in its findings.

However, the Supreme Court, in reversing, expressly rejected our ruling that specific findings as to these intangibles need be made. The Supreme Court held that the provisions of the termination statutes, in particular the discretionary power of the trial court to keep the family together even when it could properly terminate, *see* N.C. Gen. Stat. § 7A-289.31(a)-(b) (1981), provided an appropriate forum for the consideration of these intangible factors.

### V

We therefore hold that the court properly found that parental rights should be terminated. Its findings of neglect are supported by clear, cogent, and convincing evidence, and the order appealed from is therefore

Affirmed.

Judges WELLS and JOHNSON concur.