IN THE MATTER OF: ROBIN ELAINE McDONALD, STACIE RAY OXEN-
DINE, SHARON MICHELLE McDONALD: MINOR CHILDREN

No. 8426DC233

(Filed 15 January 1985)

1. **Parent and Child § 1.5— termination of parental rights—evidence of breath-
alyzer test results not objectionable**

In a proceeding to terminate parental rights, respondents could not object to evidence with regard to results of a breathalyzer test administered to the father on the ground that a proper foundation was not laid for the testimony where respondents subsequently elicited testimony from the same witness with regard to breathalyzer test results of the mother; furthermore, any error

In re McDonald

in the admission of the evidence was rendered harmless by the father's own testimony, during which without objection he admitted *inter alia* that he was an alcoholic and that he had been drinking heavily only days before the test.

**2. Evidence § 29.2— what business records do not show—admissibility of evidence**

According to the business records exception to the hearsay rule, testimony as to what business records do not show is admissible when relevant.

**3. Parent and Child § 1.5— termination of parental rights—expert testimony as to respondents' parenting abilities—evidence admissible**

In a proceeding to terminate parental rights the trial court did not err in admitting testimony of a clinical psychologist that respondents could not function effectively as the custodians to their own children or even to children who did not exhibit the problems which their children exhibited, that if the court should find that respondents had abused alcohol in the months before the trial, this fact would reinforce his opinion, and that even if respondents ceased consuming alcohol, this factor would not change his opinion. Such testimony was properly admitted because the witness was an expert in clinical psychology who had personally conducted psychological examinations of the children and also reviewed the reports concerning prior examinations of the children by another psychologist, and by virtue of his expertise and the information before him, the witness was better qualified than the trial court to form an opinion as to respondents' parenting abilities.

**4. Parent and Child § 1.6— termination of parental rights—neglect—sufficiency of evidence**

The trial court did not err in basing its termination of the mother's parental rights on neglect where the court based its finding upon a prior adjudication of neglect and upon evidence that the mother had an alcohol problem which subjected her children to specific dangerous incidents and an injurious environment and that the mother's alcohol problem resulted in psychological problems for the children; furthermore, the fact that incidents of neglect by the mother occurred two years and more before the termination proceeding went to the weight of the evidence, not to its admissibility.

**5. Parent and Child § 1.6— termination of parental rights—children in foster care —no self-improvement by mother—sufficiency of evidence**

Evidence was sufficient to support the trial court's order terminating the mother's parental rights on the ground that she had willfully left her children in foster care for more than two years without a showing that substantial progress had been made in correcting conditions which led to the removal of the children from her care where the evidence showed only minimal efforts on the mother's part to seek treatment for her alcoholism and virtually complete lack of success in overcoming her problem. G.S. 7A-289.32(3).

**6. Parent and Child § 1.6— termination of parental rights—failure to support children—sufficiency of evidence**

Evidence was sufficient to support the trial court's termination of parental rights on the ground of failure to provide support pursuant to G.S.

7A-289.32(4) where such evidence tended to show that respondent father had full time employment paying $5.50 per hour for the six months next preceding the filing of the termination petition; the mother had not been employed for the past five years, and her only efforts at finding a job had been to make two job applications; and in the two years preceding the filing of the termination petition the parents paid $8.50 toward the support of their children.

APPEAL by respondents from *Matus, Judge*. Judgments entered 24 October 1983 in District Court, MECKLENBURG County. Heard in the Court of Appeals 14 November 1984.

This case presents an appeal from three orders terminating the parental rights of respondent mother Vashtie Oxendine McDonald as to her three minor children, and terminating the parental rights of respondent father Eugene Dayton McDonald as to two of the children, Robin Elaine McDonald (Robin) and Sharon Michelle McDonald (Sharon). In the same proceeding, the trial court also terminated the parental rights of Curtis Carlight, father of Stacie Ray Oxendine (Stacie). Mr. Carlight never answered nor did he participate in these proceedings; he does not appeal.

The Mecklenburg County Department of Social Services (DSS) filed the petitions in this case on 5 May 1983. The hearing was held on 11 July 1983, and orders were entered terminating respondents' parental rights. As to Stacie, the trial court terminated Mrs. McDonald's parental rights under G.S. 7A-289.32(2) and (3). As to both Robin and Sharon, the trial court terminated Mr. McDonald's parental rights under G.S. 7A-289.32(3) and (4), and Mrs. McDonald's parental rights under G.S. 7A-289.32(2), (3) and (4). From the orders terminating their parental rights, respondents appeal.

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski and William H. McNair, for petitioner-appellee.*

*Ellis M. Bragg, for respondent-appellants.*

EAGLES, Judge.

[1] Respondents first assign error to the admission of the testimony of Betty Dibrell as to the results of Mr. McDonald's breathalyzer reading on 28 March 1983. The basis of their objection is that petitioner failed to lay a proper foundation for the in-

troduction of these results into evidence. *Robinson v. Insurance Co.*, 255 N.C. 669, 122 S.E. 2d 801 (1961) (describing requisite foundation for admissibility of blood alcohol test). Ms. Dibrell, an employee of the Randolph Clinic, an outpatient alcoholism treatment facility, testified that she is the custodian of clinic business records. She testified on direct examination that Mr. McDonald's records showed that on 28 March 1983 he was administered a breathalyzer test at the clinic which revealed a blood alcohol content of .08. She stated that she did not administer the test.

We need not consider whether a proper foundation was laid for Ms. Dibrell's testimony, nor whether it falls within the business records exception to the hearsay rule, as respondents waived their right to object to the admission of this evidence. On cross-examination, counsel for appellants also questioned Ms. Dibrell concerning the breathalyzer results for Mrs. McDonald contained in clinic records. Respondents elicited the response that the results of two tests administered at the clinic on separate occasions showed blood alcohol readings of .00. They cannot now complain of the lack of a proper foundation for evidence elicited for their benefit which was obtained from the same source. Furthermore, any error in the admission of the evidence was rendered harmless by Mr. McDonald's own testimony, during which without objection he admitted *inter alia* that he was an alcoholic and that he had been drinking heavily only days before the test. We note the "well-recognized rule in this jurisdiction that the admission of testimony over objection is ordinarily harmless error when testimony of the same import had previously been admitted without objection or is thereafter introduced without objection." *State v. Jones*, 287 N.C. 84, 99, 214 S.E. 2d 24, 35 (1975).

[2] Appellants also allege that the trial court should have refused to admit the testimony of Ms. Dibrell that the clinic records did not indicate that Mr. and Mrs. McDonald were ever refused treatment for nonpayment of their bills, because the testimony was an impermissible expression of opinion. We disagree. According to the business records exception to the hearsay rule, *see generally* 1 Stansbury's N.C. Evidence § 155 (2d rev. ed. 1982), when relevant, testimony as to what business records do not show is admissible. *See State v. Rogers*, 30 N.C. App. 298, 226 S.E. 2d 829, *review denied*, 290 N.C. 781, 229 S.E. 2d 35 (1976). Furthermore, other evidence demonstrates that respondents con-

tinued to receive treatment at the clinic despite a failure to pay fees, or that in some instances, treatment was terminated for other reasons. This assignment of error is overruled.

[3]    Appellants next argue that the trial court erred in admitting the testimony of Dr. J. Thomas Stack that the appellants could not function effectively as parents-custodians of their children. Dr. Stack was stipulated to be an expert in clinical psychology. The gist of his testimony was that, in his opinion, the appellants could not function effectively as the custodians to their own children, or even to children who did not exhibit the problems that their children exhibited, that if the court should find that appellants had abused alcohol in the months before the trial, this fact would reinforce his opinion, and that even if appellants ceased consuming alcohol, this factor would not change his opinion. The basis for appellants' objection is that Dr. Stack's opinion testimony embraced the very issues to be decided by the trier of fact: whether the children were neglected, whether appellants were capable of improving the parent-child relationship, and whether it was in the best interests of the children that appellants' parental rights be terminated.

We observe that Dr. Stack's testimony did not invade the province of the finder of fact. He expressed no opinion as to whether the children were neglected, and specifically denied opining whether it was in the children's best interests that the respondents' parental rights be terminated. Whether appellants were capable of improving the parent-child relationship is not an ultimate issue in termination of parental rights cases as respondents suggest. Dr. Stack's testimony only contained an opinion as to one of the factors a trial judge must consider in determining the child's best interest in a termination case, that is, parenting ability.

Furthermore, the prohibition against opinion testimony as to ultimate issues has been significantly eroded, particularly in regard to expert opinion testimony. Whether the expert testimony invaded the province of the finder of fact has been rejected as the proper inquiry. Rather, the test is "whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of

fact." *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E. 2d 905, 911 (1978). *See generally*, 1 Stansbury's N.C. Evidence § 126 (2d rev. ed. 1982) (noting that G.S. 8C-1, Rule 704, effective 1 July 1984, abolishes the rule that opinion testimony, lay or expert, is not admissible because it invades the province of the trier of fact). Applying the proper test to the facts before us, it is clear Dr. Stack's testimony was properly admitted. Dr. Stack was an expert in clinical psychology who had personally conducted psychological examinations of the children and also reviewed the reports concerning prior examinations of the children by another child psychologist. By virtue of his expertise and the information before him, Dr. Stack was better qualified than the trial court to form an opinion as to the respondents' parenting abilities. This assignment of error is overruled.

[4] By their fourth assignment of error, appellants contend that it was reversible error for the trial court to find that Mrs. McDonald had neglected each of her three minor children pursuant to G.S. 7A-289.32(2). (Mr. McDonald's parental rights were terminated on grounds other than neglect.) The basis for appellants' contention is that in finding neglect the trial court relied exclusively on the 9 June 1981 order of Judge William G. Jones that each of the minor children was a neglected child.

The recent case of *In re Ballard*, 311 N.C. 708, 319 S.E. 2d 227 (1984), modifying an earlier decision of this Court, governs the issue of the effect of a prior order determining neglect on a subsequent proceeding to terminate parental rights for neglect. The Supreme Court framed the controlling rule thus: "[E]vidence of neglect by a parent prior to losing custody of a child — including an adjudication of such neglect — is admissible in subsequent proceedings to terminate parental rights." *Id.* at 715, 319 S.E. 2d at 232. Clearly, it was not improper for the trial court to consider Judge Jones' order, and incorporate that prior order into the orders terminating respondents' parental rights.

The appellants' assignment of error is not only that Judge Matus relied on the prior order, but that he relied *exclusively* upon that prior order in concluding that Mrs. McDonald had neglected her children. Again, the controlling law is found in *Ballard*. Since the "determinative factors" in termination proceedings are "the best interests of the child and the fitness of the

parent to care for the child *at the time of the termination pro-*
*ceeding,*" *id.* at 715, 319 S.E. 2d at 232 (emphasis in original), the
trial court must consider any evidence of changed conditions after
the child was removed from parental custody in light of evidence
of prior neglect and the probability of a repetition of neglect. *Id.*

The trial court did consider other evidence. The trial court
stated in its orders that it was basing its finding of neglect not
only upon the prior order but also upon other evidence received
in the termination hearing, and our examination of the record
satisfies us that the trial court did not confine its consideration to
the evidence of neglect contained in the 9 June 1981 order. In
each of the three orders terminating parental rights, there is a
finding incorporating Judge Jones' prior order, specifically track-
ing the language in the prior order that "on April 28, 1981, Mrs.
McDonald was under the influence of alcoholic beverages to such
an extent that she was staggering, that she had a gasoline can
which contained gasoline and a lawn mower in her home, and she
was smoking a cigarette in close proximity to these materials."
The orders contain additional findings that before the removal of
the children from her custody on 28 April 1981, respondent moth-
er had been consuming alcoholic beverages to the extent that she
failed to provide adequate care and support for her children, and
that she permitted them to live in an environment injurious to
their health and welfare, and that she has continued to consume
alcoholic beverages on a regular basis since the children were
removed from her home. Further, the orders included a finding
that on some occasions the consumption of alcoholic beverages
has led to disruptive and combative behavior on the part of the
respondent mother.

The foregoing evidence supports a finding of neglect pur-
suant to G.S. 7A-289.32(2). The findings comport with the direc-
tive to *Ballard* that "termination of parental rights for neglect
may not be based solely on conditions which existed in the distant
past but no longer exist." *Id.* at 714, 319 S.E. 2d at 231-2. We note
that the proscription in *In re Phifer,* 67 N.C. App. 16, 312 S.E. 2d
684 (1984), that a finding that a parent abuses alcohol, without
proof of adverse impact upon the child, will not support a ter-
mination of parental rights for neglect, has not been violated. The
evidence of the gasoline can incident and extensive evidence con-
cerning the children's psychological problems show the adverse

*In re McDonald*

effect of their mother's alcoholism on the minor children. This evidence, reflected in the trial court's findings, far surpasses a bare finding that a parent has an alcohol problem. The foregoing discussion makes it unnecessary to address respondents' contention that proof of a single act of neglect is insufficient to establish the neglect ground for termination set forth in G.S. 7A-289.32(2). The trial court did not base its conclusion on a single incident of neglect but on a long-standing pattern of neglect of which Mrs. McDonald's alcoholism was a principal contributing cause.

Appellants also suggest that the incidents of neglect by Mrs. McDonald, occurring two years and more before the termination proceeding, were too remote to be considered by the trial court. We disagree. Evidence of events even more removed in time from the hearing than the evidence at bar has been utilized to support a termination for neglect. *See, e.g., In re Moore,* 306 N.C. 394, 293 S.E. 2d 127 (1982), *appeal dismissed sub nom. Moore v. Guilford County Dept. of Social Services,* 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed. 2d 987 (1983) (six years). The remoteness of evidence goes to its weight, not to its admissibility.

The key to a valid termination of parental rights on neglect grounds where a prior adjudication of neglect is considered is that the court must make an *independent* determination of whether neglect authorizing the termination of parental rights existed at the time of the hearing. *Ballard, supra.* The trial court here made its determination independently of the prior order. We find no error in the trial court's basing the termination of Mrs. McDonald's parental rights on grounds of neglect.

Appellants next contend that the trial court erred in terminating parental rights under G.S. 7A-289.32(3), which allows the trial court to terminate parental rights upon a finding that:

(3) The parent has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made within two years in correcting those conditions which led to the removal of the child or without showing positive response within two years to the diligent efforts of a county Department of Social Services, a child-caring institution or licensed child-placing agency to encourage the parent to strengthen the parental relationship to the child or to make

and follow through with constructive planning for the future of the child.

First, appellants contend that the statutory "two consecutive years" requirement was not met as to Mr. McDonald. The record shows that the children were removed from parental custody on 28 April 1981. The DSS filed its petition to terminate parental rights on 5 May 1983, and the case was heard on 11 July 1983. Mr. McDonald was in prison from 11 May 1978 until 11 June 1981. Respondents argue that the clock did not begin running as to Mr. McDonald until 11 June 1981, the date of his release from prison, and that the petition was filed less than two years from that date. We need not reach the issue of whether the two year period of G.S. 7A-289.32(3) is to be calculated from the date of the filing of the petition, or from the date of the termination hearing. We find that the trial court properly terminated Mr. McDonald's parental rights pursuant to G.S. 7A-289.32(4), *infra*, and affirm on that ground. *See In re Pierce*, 67 N.C. App. 257, 312 S.E. 2d 900 (1984) (finding of at least one ground enumerated in statute will support valid termination).

[5]   As to Mrs. McDonald, however, we find that the unexcepted-to findings of fact in the termination orders fully support the conclusions terminating her parental rights under that subsection. *See In re Smith*, 56 N.C. App. 142, 287 S.E. 2d 440, *cert. denied*, 306 N.C. 385, 294 S.E. 2d 212 (1982) (findings of fact not excepted to are deemed supported by competent evidence and are conclusive on appeal). These findings depict only minimal efforts on Mrs. McDonald's part to seek treatment for her alcoholism and the virtually complete lack of success in overcoming her problem. As stated by the trial court, respondent mother's sporadic attendance at the Randolph Clinic resulted in "little participation on her part in discussions concerning alcohol abuse and the professional staff saw little if any improvement in her understanding of alcohol abuse and its effects on her." Mrs. McDonald's failure to gain control of her alcohol abuse is illustrated by the finding that she was consuming alcoholic beverages on a daily basis as recently as June 1983. Significantly, despite intermittent efforts at overcoming the chronic alcoholism that was the root cause of respondent mother's inability to properly care for her children, the record discloses these efforts never resulted in actual improvement. As we observed in a recent discussion of G.S. 7A-289.32(3):

> Implicit in the term "positive response" is that not only must positive efforts be made toward improving the situation, but that these efforts are obtaining or have obtained positive *results*. Otherwise, a parent could forestall proceedings indefinitely by making sporadic efforts for that purpose.

*In re Tate*, 67 N.C. App. 89, 94, 312 S.E. 2d 535, 539 (1984).

We also overrule respondents' related assignment of error that the trial court erred in finding that respondents had at all times the means and ability to attend the Randolph Clinic for treatment. Again, we do not address this assignment of error as to Mr. McDonald. As to Mrs. McDonald, our review of the record satisfies us that the findings of the trial court with respect to respondent mother's ability to attend the Randolph Clinic are supported by the evidence.

Appellants' final argument is that the trial court erred in denying its motions to dismiss at the conclusion of appellee's case, and at the conclusion of all the evidence. By this assignment of error, appellants are actually making three separate arguments: that the trial court erred in terminating the parental rights of respondents as to Robin and Sharon pursuant to G.S. 7A-289.32(4), that the trial court failed to comply with the standard of proof required to terminate parental rights as set forth in *In re Montgomery*, 62 N.C. App. 343, 303 S.E. 2d 324 (1983), and that the trial court abused its discretion in concluding that it was in the best interest of the minor children that respondents' parental rights be terminated.

[6] G.S. 7A-289.32(4) provides that the court may terminate parental rights upon a finding that for the six months next preceding the filing of the petition, while the child is in custody of the department of social services, the parent "has failed to pay a reasonable portion of the cost of care for the child." The parents' ability to pay controls what amount is a "reasonable portion" of the cost of care, *In re Clark*, 303 N.C. 592, 281 S.E. 2d 47 (1981), and nonpayment will be deemed a failure to pay a reasonable portion if and only if the respondent could pay some amount greater than zero. *In re Bradley*, 57 N.C. App. 475, 291 S.E. 2d 800 (1982). *See also In re Biggers*, 50 N.C. App. 332, 274 S.E. 2d 236 (1981) (determination of "reasonable portion" based on interplay of amount necessary to meet reasonable needs of child, and ability of

parties to provide that amount). Where a trial court fails to make any findings as to the parents' ability to pay, the order will not support termination of parental rights under G.S. 7A-289.32(4). *See, e.g., In re Johnson*, 70 N.C. App. 383, 320 S.E. 2d 301 (1984); *In re Phifer, supra* (although order contained findings concerning parents' resources).

The trial court found that since April 1981, respondent parents paid the DSS $4.25 per child towards the support of their two daughters, a total of $8.50. (Although a 20 July 1981 order had suspended the requirement that the parents pay any child support, this obligation was specifically reinstated by a subsequent order in effect the six months next preceding the filing of the petition.) The unchallenged finding of fact relating to payment of support establishes that since 16 July 1982, the date of the order reinstating the requirement that respondents pay child support, Mr. McDonald has had full-time employment paying at least $5.00 per hour for extended periods of time; specifically, in the three months prior to 5 May 1983, he was continuously employed by a construction company earning $5.50 per hour. With respect to Mrs. McDonald, the court found that she has not been employed during the past five years, and her only efforts at finding a job have been to make two job applications. *See In re Bradley, supra* (when a parent has forfeited opportunity to provide some portion of the cost of the child's care by her misconduct, she will not be heard to assert that she has no ability or means to contribute to the child's care and is therefore excused from contributing any amount). *Accord, In re Tate*, 67 N.C. App. 89, 312 S.E. 2d 535 (1984).

As to appellants' argument concerning *In re Montgomery*, the opinion of the Court of Appeals has been reversed by the Supreme Court since the case at bar was tried. *In re Montgomery*, 62 N.C. App. 343, 303 S.E. 2d 324 (1982), *rev'd*, 311 N.C. 101, 316 S.E. 2d 246 (1984). Therefore, we need not examine whether the standard of proof as articulated by this Court in *Montgomery* was complied with by the trial court. *See In re Clark*, 72 N.C. App. 118, 323 S.E. 2d 754 (1984).

Finally, upon a finding that one or more grounds exist under G.S. 7A-289.32 to terminate parental rights, the trial court is never required to terminate parental rights, but is given the dis-

cretion to do so. *See, e.g., In re Pierce, supra.* Our examination of the record before us discloses no evidence that the trial court abused its discretion in concluding that it was in the best interests of the minor children that the parental rights of respondents be terminated.

We summarize our holding: As to respondent mother, we affirm the trial court in all respects; namely, we affirm the termination of her parental rights as to Stacie pursuant to G.S. 7A-289.32(2) and (3), and as to Robin and Sharon, we affirm pursuant to G.S. 7A-289.32(2), (3) and (4). As to respondent father, we affirm the termination of his parental rights as to Robin and Sharon pursuant to G.S. 7A-289.32(4).

Affirmed.

Chief Judge VAUGHN and Judge BRASWELL concur.

Former Chief Judge VAUGHN concurred in the result reached in this case prior to 31 December 1984.

Judge BRASWELL concurred in the result reached in this case prior to 31 December 1984.