IN THE MATTER OF: BRITTANY MICHELLE DAVIS

No. 935DC1012

(Filed 20 September 1994)

1. **Parent and Child § 125 (NCI4th)— proceeding to terminate parental rights—mother compelled to testify—subpoena not required**

    In a proceeding to terminate parental rights, respondent mother could be compelled to testify even in the absence of a subpoena.

    **Am Jur 2d, Parent and Child §§ 7, 11.**

2. **Parent and Child § 101 (NCI4th)— termination of parental rights—evidence of neglect**

    There was clear, cogent, and convincing evidence that neglect authorizing termination of respondents' parental rights existed at the time of the termination hearing where respondents did not attempt to correct the conditions which led to findings of neglect on four earlier occasions by obtaining continued counseling, a stable home, stable employment, and parenting classes until DSS informed them termination proceedings were being pursued.

    **Am Jur 2d, Parent and Child §§ 7, 11.**

Appeal by respondents from order filed 26 March 1993 in New Hanover District Court by Judge Shelly Sveda Holt. Heard in the Court of Appeals 23 August 1994.

*Julia Talbutt for petitioner-appellee New Hanover County Department of Social Services.*

*William Norton Mason for appellee Guardian ad Litem.*

*Nora Henry Hargrove for respondent-appellants.*

GREENE, Judge.

James F. Davis, Jr. and Dena Davis (respondents) appeal from an order filed 26 March 1993 in New Hanover County District Court, terminating respondents' parental rights to Brittany Michelle Davis (Brittany).

On 28 October 1992, the New Hanover County Department of Social Services (DSS) filed a petition to terminate respondents' parental rights because, among other reasons, Brittany is a neglected juvenile due to respondents' failure "to provide adequate care, supervision or discipline throughout Brittany's life." At the hearing on DSS's petition to terminate respondents' parental rights, evidence was introduced showing that Brittany had been adjudicated a neglected juvenile by order dated 8 November 1990. By subsequent orders dated 21 March 1991, 9 January 1992, and 9 July 1992, custody of Brittany remained with DSS. Each order provided that James F. Davis, Jr. (Mr. Davis) was to receive counseling on issues of domestic violence, that Dena Davis (Mrs. Davis) was to take empowerment classes, and that both were to take parenting classes and take advantage of mental health services and psychological counseling services.

Mary Southerland (Ms. Southerland), a social worker for DSS, testified at the hearing that she became involved with Brittany's case after Brittany had been in foster care approximately ten months, to help respondents "correct the conditions that led to Brittany being placed in foster care to begin with." She told respondents they needed "to attend and complete parenting classes," have a "stable house," have "stable job[s]," and "be engaged in regular long-term counseling, which they had not." Before Ms. Southerland received Brittany's case, two other workers "had tried to get [respondents] involved in parenting classes" but could not get them to attend. "Only when [DSS] gave notice to [respondents] [in the spring of 1992] of the change of the permanent plans—change from reunification to termination, that they did finally begin to show an interest in possibly attending classes." Mrs. Davis then completed a parenting class in the summer of 1992, but Mr. Davis has failed to do so. Ms. Southerland testified that although respondents have been in their current residence since November 1992, "[f]rom October of '90 and July of '92," "there were approximately twenty changes of residence."

In addition, Ms. Southerland testified that respondents' employment history has been nonexistent or sporadic at best. As to counseling, she has "over the past year and a half encouraged counseling many times due [to] their history [and] there has been very, very little. . . . Even after psychiatric hospitalization, they did not follow up with regular, consistent, ongoing, long-term counseling." As to visitation, respondents attended the majority of scheduled visitations but overnight visitations ceased after "during both visits there had been loud parties and drinking and so forth while Brittany was in the home

to the point where [respondents] were evicted from this park." Ms. Southerland also testified that since respondents were informed that termination proceedings were being considered, they missed two scheduled visits with Brittany and a scheduled conference with Ms. Southerland. Furthermore, she has "not been made aware of any substantial progress in the last few months."

The attorney for DSS called Mrs. Davis to testify; however, respondents' attorney objected because there was no subpoena issued calling Mrs. Davis as a witness and because Mrs. Davis might incriminate herself. The court overruled the objection and stated that asserting the 5th Amendment privilege against self-incrimination "would be done on a question by question basis." Mrs. Davis then took the stand and testified that since Brittany was placed in custody of DSS, she has a stable job, she and Mr. Davis have obtained a stable home, they "talk about [their] problems instead of fighting them out," and she completed a parenting class.

After the hearing, Judge Shelly Sveda Holt made the following findings of fact in an order dated 26 March 1993:

2. . . . That Brittany Michelle Davis has been continuously placed in foster care since 4 October 1990.

. . . .

13. That the order of 9 January 1992, provided that there has been an absolute failure on the part of Mr. and Mrs. Davis to resolve marital conflicts, such that the environment which would be provided the child Brittany Davis was perpetuated as a high risk environment. . . . in July 1992, the Court found that there had been no change of circumstances in regard to attendance at Empowerment course, in regard to counseling or attendance at a parenting course. The order of 9 July 1992, found significant Mr. and [Mrs.] Davis's failure to attend counseling as the issues of domestic violence had been central to the elements of neglect previously adjudicated.

. . . .

15. . . . Mr. and [Mrs.] Davis made no attempts at compliance with the clear and consistent provisions of the Court orders until sometime in October when Mr. and [Mrs.] Davis enrolled in a parenting course in October 1992, the same month the termination of parental rights action was filed. That the order of 9 July 1992,

found that Mr. and [Mrs.] Davis had attended on 7 July 1992, the first class of a parenting course. That this parenting course was not completed by Mr. nor [Mrs.] Davis.

Based on these findings, the court concluded that Brittany "has been and continues to be a neglected juvenile within the meaning of G.S. 7A-517(21)" in that respondents have not acknowledged the need for counseling nor participated in counseling since February 1991 despite court orders to do so, and respondents "have wilfully left Brittany Davis in foster care without showing a positive response under all the circumstances to the diligent efforts of [DSS] to correct those conditions which led to the original removal of Brittany." The court also concluded that, from clear, cogent and convincing evidence, there has been "no substantial change in circumstances which led to the removal of [Brittany] and . . . no compliance on the part of [respondents] with provisions of four previous Court orders, such that this Court could find any likelihood of improved conditions . . . suitable to meet the needs of [Brittany]." Based on these findings and conclusions, the trial court ordered that the parental rights of respondents be terminated.

---

The issues presented are whether: (I) Mrs. Davis was properly compelled to testify when she was not under subpoena nor otherwise summoned to court; and (II) there was clear, cogent and convincing evidence to support the court's findings and conclusions that Brittany remained a neglected juvenile.

I

[1] Respondents argue that Mrs. Davis should not have been forced to testify "absent being summoned to court by either subpoena, summons to appear, bench subpoena or discretionary decision by the court to call a witness." We disagree. Mrs. Davis, as a respondent in a proceeding to terminate her parental rights, is a party to the proceeding. N.C.G.S. § 7A-289.27(a)(1) (1989) (upon filing of petition to terminate parental rights, court shall issue summons to child's parents who shall be named as respondents). DSS was therefore free to call Mrs. Davis to testify as an adverse party when she appeared at the proceeding, and a subpoena was not required. N.C.G.S. § 1A-1, Rule 43(b) (1990) (party may call an adverse party and interrogate him). We acknowledge that in this civil proceeding, Mrs. Davis may have been asked questions subjecting her to criminal prosecution, and in that event, she had the right to refuse to answer those questions.

*Allred v. Graves*, 261 N.C. 31, 134 S.E.2d 186 (1964) (constitutional privilege against self-incrimination applies in both civil and criminal proceedings whenever a person's answer might tend to subject him to criminal responsibility). Because, however, there were no objections at trial to any of the questions tendered, we need not address this issue. N.C.R. App. P. 10(b)(1).

## II

[2] N.C. Gen. Stat. § 7A-289.32 provides several grounds for termination of parental rights; however, if findings of fact support the conclusion that grounds for termination exist under one subdivision in Section 7A-289.32, we need not address whether termination was proper under the other subdivisions. *In re Parker*, 90 N.C. App. 423, 424, 368 S.E.2d 879, 880 (1988). In this case, one basis for terminating respondents' parental rights was neglect. A trial court may terminate parental rights if it finds clear, cogent and convincing evidence that the parent has neglected the child within the meaning of N.C. Gen. Stat. § 7A-517(21). N.C.G.S. § 7A-289.32(2) (1993); *see In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984) (in termination proceeding, neglect must be proven by clear, cogent and convincing evidence). Under Section 7A-517(21), a neglected juvenile is one who "does not receive proper care, supervision, or discipline . . . or who has been abandoned . . . or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7A-517(21) (1993).

Although Brittany was adjudicated a neglected juvenile prior to the proceeding to terminate respondents' parental rights, "a prior adjudication of neglect, standing alone, is insufficient to support termination when the parents have been deprived of custody for a significant period of time before the proceeding," *In re Bluebird*, 105 N.C. App. 42, 48, 411 S.E.2d 820, 823 (1992), and the trial court must "make an independent determination of whether neglect authorizing termination of the respondent's parental rights existed at the time of the termination hearing." *In re Ballard*, 311 N.C. 708, 716, 319 S.E.2d 227, 233 (1984). "The trial court must consider evidence of changed conditions . . . in light of the history of neglect by the parents and the probability of a repetition of neglect." *Id.* at 714, 319 S.E.2d at 231 (*quoting In re Wardship of Bender*, 352 N.E.2d 797, 804 (Ind. App. 1976)).

In this case, there is clear, cogent and convincing evidence that "neglect authorizing termination of the respondent[s'] parental rights existed at the time of the termination hearing." Respondents did not

attempt to correct the conditions that led to findings of neglect on 8 November 1990, 21 March 1991, 9 January 1992, and 9 July 1992 by obtaining continued counseling, a stable home, stable employment, and parenting classes until DSS informed them termination proceedings were being pursued in 1992. In failing to take steps to correct the circumstances leading to Brittany's adjudication as a neglected juvenile and placement in foster care, despite having approximately two years to do so before the petition for termination of parental rights was filed, respondents have not provided "proper care, supervision, or discipline" and have not corrected the environment that is "injurious to [Brittany]'s welfare." Therefore, in light of the history of neglect by respondents, the lack of changed conditions, and the probability of a repetition of neglect, there is clear, cogent and convincing evidence that Brittany remains a neglected juvenile, thereby supporting termination of respondents' parental rights. For these reasons, the decision of the trial court is

Affirmed.

Judges JOHN and McCRODDEN concur.