McGEE, Judge.
Respondent appeals from orders entered 23 April 2003, nunc pro tunc 27 August 2003, terminating her parental rights to her daughter, T.D.C.
The evidence at the termination hearing tended to show that Brunswick County Department of Social Services (petitioner) filed a petition alleging that T.D.C. was a neglected child. T.D.C. was adjudicated a neglected child in an order entered 8 February 2002 in which the trial court made the following findings of fact:
2. That [respondent] has not had consistent housing over the past several months and has relied upon the kindness of friends, relatives and agencies to provide for she [sic] and [T.D.C.]. . . .
3. That [T.D.C.] has, on occasion, been improperly bathed and clothed by [respondent] and has been placed in diapers that were three times too largefor her. That on two separate occasions [T.D.C.] came into the custody of [petitioner] from [respondent's] home suffering from an infestation of head lice. That [T.D.C] was left with the babysitter with a bottle full of clabbered milk, with a nipple that was unclean.
4. That [respondent] has failed to provide proper care or supervision of [T.D.C.], often not responding to [T.D.C.'s] cries in the night.
In a subsequent disposition order, the trial court ordered respondent to complete parenting classes and a money management class. In a review order entered 15 April 2002, respondent was ordered to follow all recommendations from a psychological evaluation as well as comply with all activities listed in a family services case plan. The family services case plan required that respondent maintain housing.
Respondent, with HUD assistance, obtained housing but was evicted on 31 May 2002. Respondent was evicted because she allowed P.R., T.D.C.'s purported father, to live in the home after his release from prison. Respondent then applied for public housing in Scotland County but did not find a place to live within the permitted amount of time. At the time of the termination hearing, respondent was living with her father and stepmother. Pursuant to a home study conducted in January 2002, petitioner had rejected the home of respondent's father and stepmother as appropriate for placement of T.D.C. In addition, respondent was the victim of an earlier substantiated instance of physical abuse inflicted by her father. Dr. Jerry Sloan (Dr. Sloan), a psychologist, evaluated respondent on 23 May 2002. In his evaluation, entered into evidence at trial, Dr. Sloan diagnosed respondent with borderline personality disorder, learning disability in reading and written language, and adjustment disorder with depressed mood. Dr. Sloan's report contained the following observations:
[Respondent] has a short attention span and is easily distracted, and she has difficulty focusing and maintaining concentration if her child or others are present. . . .
. . . .
Casework staff is impressed with her lack of knowledge of child development and her confusion when given simple, basic instructions, repeated several times. . . .
. . . .
[I]t appears that [respondent's] knowledge of basic child development principles and children's needs is very poor.
. . . .
[Respondent] has a history of a neglectful and inappropriate family background, with family members who have used drugs in her presence and have allowed her to use drugs while she was pregnant. . . . [Respondent] appears unwilling and unable to accept the responsibility for her own behavior. . . . Her own personality is so poorly developed and her basic level of immaturity is so severe that it appears unlikely that she will be able to assume full responsibility for the care of her child in the foreseeable future.
Dr. Sloan recommended that respondent undergo a trial of psychotropic medication to address her psychiatric symptoms.
Petitioner filed a petition dated 21 November 2002 to terminate the parental rights of respondent and P.R. The trialcourt found that respondent had violated court orders by failing to complete parenting and money management classes, by not complying with the recommendations of her psychological evaluation, and by not maintaining housing. Based upon these findings of fact, the trial court concluded in an order entered 23 April 2003, nunc pro tunc 27 August 2003, that "grounds exist pursuant to N.C.G.S. § 7B-1111 (a)(1),(a)(3), (a)(5) and (a)(7) to terminate" respondent's and P.R.'s parental rights. In a disposition order entered 23 April 2003, nunc pro tunc 27 August 2003, the trial court determined that it was in the best interest of T.D.C. that respondent's and P.R.'s parental rights be terminated. Respondent appeals; P.R. does not appeal.
I.
A termination of parental rights proceeding has two stages. In re Johnston, 151 N.C. App. 728, 731, 567 S.E.2d 219, 220 (2002); see also N.C. Gen. Stat. § 7B-1111 (2003) and N.C. Gen. Stat. § 7B-1110 (2003). The first stage is the adjudicatory stage, where the trial court determines whether grounds exist to terminate parental rights under N.C. Gen. Stat. § 7B-1111. Johnston, 151 N.C. App. at 731, 567 S.E.2d at 220-21. If one or more of the grounds for termination is established, the trial court proceeds to the disposition stage where the trial court determines whether it is in the best interests of the child to terminate parental rights. Id. at 731, 567 S.E.2d at 221.
Respondent first assigns error to the trial court's finding of fact and conclusion of law that respondent neglected T.D.C. Wereview whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. In re McMillon, 143 N.C. App. 402, 408, 546 S.E.2d 169, 174, disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001). If the trial court's findings of fact are supported by clear and convincing evidence, they are binding on appeal, even where there exists evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988).
In this case, the trial court made the following finding of fact:
10. That the mother, [respondent], has continued to neglect [T.D.C.] by failing to comply with the prior orders of this Court in that she has failed to complete a money-management program, failed to follow the recommendations of her psychological evaluation and failed to maintain suitable housing. Pursuant to N.C.G.S. §7B-1111(a) grounds exist for the termination of parental rights.
The trial court then made the following conclusion of law:
2. Grounds exist pursuant to N.C.G.S. §7B-1111(a)(1), (a)(3), (a)(5) and (a)(7) to terminate the parental rights of [respondent and P.R.].
N.C. Gen. Stat. § 7B-1111(a)(1) provides that a trial court may terminate parental rights when a parent has neglected a juvenile within the meaning of N.C. Gen. Stat. § 7B-101. N.C. Gen. Stat. § 7B-101(15) (2003) defines a neglected juvenile, in pertinent part, as one "who does not receive proper care, supervision, or discipline from the juvenile's parent, . . . or who lives in an environment injurious to the juvenile's welfare[.]" At the time of the termination hearing, T.D.C. had not been in respondent's custody for seventeen months. "[A] prior adjudication of neglect, standing alone, is insufficient to support termination when the parents have been deprived of custody for a significant period of time before the proceeding." In re Bluebird, 105 N.C. App. 42, 48, 411 S.E.2d 820, 823 (1992). In such a case, "the trial court must `make an independent determination of whether neglect authorizing termination of the respondent's parental rights existed at the time of the termination hearing.'" In re Davis, 116 N.C. App. 409, 413, 448 S.E.2d 303, 305, disc. review denied, 338 N.C. 516, 452 S.E.2d 808 (1994) (quoting In re Ballard, 311 N.C. 708, 716, 319 S.E.2d 227, 233 (1984)). In making this independent determination of neglect, "'[t]he trial court must consider evidence of changed conditions . . . in light of the history of neglect by the parents and the probability of a repetition of neglect.'" Ballard, 311 N.C. at 714, 319 S.E.2d at 231 (quoting In re Wardship of Bender, 170 Ind. App. 274, 285, 352 N.E.2d 797, 804 (1976)).
Respondent argues that at the time of the termination hearing, there was no evidence respondent had neglected T.D.C. or, that if neglect had occurred, that there was a probability of a repetition of neglect.
We first consider whether T.D.C. was neglected at the time of the termination hearing. A child is neglected at the time of a termination hearing when the child's parents have failed to correct the conditions which led to an original finding of neglect. Davis,116 N.C. App. at 413-14, 448 S.E.2d at 306. In Davis, the respondent-parents were ordered to receive counseling and take parenting classes in order to correct the conditions which led to the previous findings that their child was neglected. Id. at 410, 448 S.E.2d at 303-04. The respondent-parents were also required to have a "stable house" and "stable job[s]." Id. at 410, 448 S.E.2d at 304. Although the respondent-parents had lived in the same residence for approximately five months prior to the order terminating rights, they had only sporadic employment and did not consistently attend counseling. Id. at 410-11, 448 S.E.2d at 304. In addition, the mother-respondent only completed a parenting class after the petitioner gave notice that the permanent plan was changed from reunification to termination. Id. at 410, 448 S.E.2d at 304. Our Court held that this failure to address the conditions that led to the child's removal from the home was neglect at the time of the termination hearing because the respondent-parents did not provide "proper care, supervision, or discipline" and did not correct the environment that was "injurious to [their child's] welfare." Id. at 413-14, 448 S.E.2d at 306. Viewing the neglect in Davis in light of the history of neglect, a lack of changed conditions, and the probability of repetition of neglect, we held that clear, cogent, and convincing evidence supported termination of the respondents' parental rights. Id. at 414, 448 S.E.2d at 306.
Under Davis, we find that T.D.C. was neglected at the time of the termination hearing. Respondent failed to comply with numerouscourt orders that sought to address the conditions that led to previous findings that T.D.C. was neglected. Respondent admitted at the termination hearing that she failed to complete the money management program and failed to follow the recommendations of her psychological evaluation. In our present case, respondent, as in Davis, did not attend parenting classes until after reunification efforts were terminated and the trial court had ordered that petitioner should pursue termination of parental rights.
Finally, respondent did not maintain housing. She was evicted from public housing and was residing with her father, against whom she had a substantiated instance of physical abuse, and whose home was previously rejected for placement of T.D.C. Since respondent failed to correct the conditions that led to the previous finding that T.D.C. was neglected, we hold that T.D.C. was neglected by respondent at the time of the termination hearing.
We next consider respondent's argument that there was no evidence of a probability of repetition of neglect. In support of her argument, respondent points to her testimony that she was adequately caring for her seven-week old infant, L.C., at the time of the termination hearing. However, the evidence showed that respondent had failed to address the conditions that led to T.D.C.'s removal in the first place. In addition, respondent was living in a home in which it was inappropriate for T.D.C. to live. Therefore, despite respondent's ability to adequately care for L.C., we find that there was a probability of a repetition of neglect of T.D.C. Considering T.D.C.'s neglected status in the light of the history of neglect, the lack of changed circumstances, and the probability of a repetition of neglect, we find that there was clear, cogent, and convincing evidence supporting the trial court's finding of fact and conclusion of law that respondent neglected T.D.C.
Since we have determined that the trial court's findings support a conclusion that grounds for termination existed under N.C. Gen. Stat. § 7B-1111(a)(1), we need not consider respondent's assignments of error challenging termination on other grounds. In re Yocum, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403-04, aff'd per curiam, 357 N.C. 568, 597 S.E.2d 674 (2003).
II.
Respondent next assigns error to the trial court's following conclusion of law:
2. Grounds exist pursuant to N.C.G.S. §7B-1111(a)(1), (a)(3), (a)(5) and (a)(7) to terminate the parental rights of the Respondents.
Respondent argues that this conclusion of law is fatally deficient because it is "vague, ambiguous and is not supported by the evidence." Respondent states that it is "difficult, if not impossible, to discern what the [trial] court intended in its conclusion of law" since it made "no effort to distinguish between the mother and father[.]"
As stated previously, we review conclusions of law for whether they are supported by the findings of fact. McMillon, 143 N.C. App. at 408, 546 S.E.2d at 174. We find that the above conclusionis supported by the following findings of fact:
9. That the father, [P.R.], and any unknown father has continued to neglect [T.D.C.] by failing to have any contact with [T.D.C.] whatsoever.
10. That the mother, [respondent], has continued to neglect [T.D.C.] by failing to comply with the prior orders of this Court . . . . Pursuant to N.C.G.S. §7B-1111(a) grounds exist for the termination of parental rights.
. . . .
13. That the mother, [respondent], has had the ability to provide support for at least a portion of the time that [T.D.C.] has been in foster care, but has failed to do so for a continuous period of six (6) months next preceding the filing of this petition.
. . . .
16. That [P.R.] and any unknown father have withheld their presence, love, care, opportunity to display filial affection and have willfully neglected to lend support and maintenance for the benefit of [T.D.C.].
17. That [P.R.] and any unknown father have failed to contact [petitioner] or [the] Guardian Ad Litem for six (6) consecutive months immediately preceding the filing of this action, thus, [P.R.] and any unknown father have abandoned [T.D.C.].
18. [T.D.C.] was born out of wedlock and the father, P.R., or any unknown father, has not, prior to the filing of this petition: established paternity judicially or by affidavit, legitimated [T.D.C.] in any way, or provided substantial support or consistent care with respect to [T.D.C. and respondent].
These findings of fact clearly support the conclusion of law that grounds existed to terminate parental rights to T.D.C.pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1), 7B-1111(a)(3), 7B-1111(a)(5) and 7B-1111(a)(7). When the trial court's findings of fact and conclusions of law are read as a whole, it is clear which ground for termination was applicable to each parent. Although unartfully drafted, the conclusion of law is not a fatal defect meriting reversal.
III.
Respondent's final assignment of error contends that the trial court did not adequately consider changed circumstances in its disposition order and therefore abused its discretion in terminating respondent's parental rights.
If grounds for termination exist, the trial court must order termination of parental rights unless termination is not in the best interests of the child. N.C. Gen. Stat. § 7B-1110(a); In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). When determining the best interests of a child, the trial court must consider all relevant and competent evidence, including the parent's changed circumstances. In re Shue, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984). We review a trial court's termination of parental rights for abuse of discretion. Anderson, 151 N.C. App. at 98, 564 S.E.2d at 602.
Respondent argues that the trial court erred in terminating respondent's parental rights because her circumstances had changed since the filing of the petition. Respondent again points to her testimony that she was adequately caring for L.C. at the time of the termination hearing. We do not find that this testimony showssufficient changed circumstances such that it would be in T.D.C.'s best interests not to terminate respondent's parental rights. Although respondent's testimony tends to show that she had not encountered any problems in caring for L.C., her seven-week old infant, the testimony does not indicate that the circumstances leading to T.D.C.'s removal from respondent's home had changed at all. Therefore, we do not find that the trial court abused its discretion in terminating respondent's parental rights.
Affirmed.
Chief Judge MARTIN and Judge WYNN concur.
Report per Rule 30(e).