IN THE MATTER OF: V.T. & A.T., Minor Children.
No. COA06-355
Court of Appeals of North Carolina.
Filed February 6, 2007
This case not for publication
Mecklenburg County Attorney's Office, by J. Edward Yeager, Jr., for petitioner-appellee Mecklenburg County Department of Social Services.
McDaniel & Anderson, L.L.P., by John M. Kirby, for the Guardian ad Litem.
Katharine Chester for respondent-appellant.
BRYANT, Judge.
N.T.[1] (respondent-mother) appeals from an order entered 11 August 2005 terminating her parental rights to her minor children V.T. and A.T. For the reasons below, we affirm the order of the trial court.

Facts and Procedural History
In June of 2002 the Iredell County Department of Social Services (DSS) received referrals concerning respondent and her minor child, A.T. On 20 June 2002, A.T. was placed in the custody of respondent's mother and step-father. Iredell County DSS learned on 23 August 2002 that respondent's step-father was a registered sex offender and immediately removed A.T. from the step-father's custody and placed him in foster care. A.T. was subsequently adjudicated a neglected and dependent juvenile by the Iredell County District Court on 8 October 2002.
The case was transferred to Mecklenburg County Youth and Family Services (YFS) on 26 November 2002. The Mecklenburg County District Court conducted a Dispositional Hearing on 4 March 2003, where the trial court adopted the Iredell County DSS case plan and YFS's recommendations. Respondent generally met the requirements of her case plan and a subsequent Permanency Planning Hearing was conducted on 19 April 2004 resulting in a trial home placement of A.T. with respondent on 27 April 2004.
On 6 May 2004, YFS filed a Juvenile Petition regarding V.T. after learning that the mother gave birth to V.T. on 29 April 2004 without having informed her social worker, the Guardian ad Litem's office or the court of her pregnancy, and because respondent had placed V.T. in the custody of her mother when she was admitted to the hospital for complications arising from the birth. YFS subsequently assumed custody of both V.T. and A.T. A Permanency Planning Review Hearing in A.T.'s case on 19 July 2004 resulted in the trial court changing the goal to adoption. V.T.'s case came before the trial court on 21 July 2004, where V.T. was adjudicated a neglected and dependent juvenile, and the trial court ordered YFS to cease reunification efforts and set the goal as adoption. On 4 November 2004 YFS filed petitions to terminate respondent's parental rights to V.T. and A.T. Respondent was not served with the petitions until 5 May 2005. The case came on for hearing on the Termination Petitions at the 27 June and 7 July 2005 sessions of Juvenile Court, Mecklenburg County, before the Hon. Louis A. Trosch, Jr., District Court Judge presiding. On 11 August 2005, the trial court entered an Order terminating respondent's parental rights to V.T. and A.T. Respondent appeals.
Respondent raises the issues of whether the trial court: (I) lacked subject matter jurisdiction over the instant action; (II) erred in failing to hold a timely hearing on the petitions to terminate respondent's parental rights; (III) erred in denying respondent's motion to recuse the presiding judge; (IV) erred in terminating respondent's parental rights because there was insufficient clear, cogent, and convincing evidence to support the trial court's findings of fact which also do not support its conclusions of law; and (V) erred in finding it was in the best interests of the children to terminate respondent's parental rights.

I
Respondent first argues the trial court lacked subject matter jurisdiction over the action to terminate respondent's parental rights because petitioner failed to secure its endorsement of the summons in this matter before it expired, and thus the action was discontinued. "Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question[, and] . . . is conferred upon the courts by either the North Carolina Constitution or by statute." Harris v. Pembaur, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987) (internal citation omitted). The district court division of the General Court of Justice has exclusive original jurisdiction of proceedings to terminate parental rights. N.C. Gen. Stat. § 7B-200(a)(4) (2005). The trial court's jurisdiction is further dependent on the existence of a valid petition filed with the trial court as a "court cannot undertake to adjudicate a controversy on its own motion[.]" In re Transportation of Juveniles, 102 N.C. App. 806, 808, 403 S.E.2d 557, 558 (1991); see also In re McKinney, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003) ("jurisdiction is dependent upon the existence of a valid motion, complaint, petition, or other valid pleading").
Turning to respondent's argument, this Court has held that "[w]here service does not occur within the required period and an endorsement, extension, or alias/pluries summons is not acquired within ninety days of the summons' issuance, the action is discontinued, the trial court lacks jurisdiction, and any judgment rendered is void." In re A.B.D., 173 N.C. App. 77, 78, 617 S.E.2d 707, 709 (2005) (citation omitted). However, where an endorsement is not obtained within ninety days after issuance or prior endorsement of a summons and the action has been discontinued, a further extension of the summons may be endorsed by the clerk, but "the action shall be deemed to have commenced on the date of such issuance or endorsement." N.C. Gen. Stat. § 1A-1, Rule 4(e) (2005).
Here, the initial summonses for respondent in this matter were issued on 4 November 2004. These summonses were returned unserved and petitioner did not obtain an endorsement on the summonses within ninety days of their issuance. Therefore, the action against respondent was discontinued on 5 February 2005. However, petitioner obtained an endorsement on the summonses on 27 April 2005 and the action to terminate respondent's parental rights is deemed to have been instituted against respondent as of this date. Respondent was served with the endorsed summonses on 9 May 2005, within the thirty-day extension granted by the 27 April 2005 endorsement. Because the summonses were properly endorsed before they were served on respondent, the action to terminate respondent's parental rights was not discontinued at the time respondent was served with the summonses and the trial court had the requisite jurisdiction to hear the petition. This assignment of error is overruled.

II
Respondent next argues the trial court erred in failing to hold a timely hearing on the petition to terminate respondent's parental rights. The trial court must hold an adjudicatory hearing on a petition to terminate parental rights "no later than 90 days from the filing of the petition or motion unless the judge pursuant to subsection (d) of [§ 7B-1109] orders that it be held at a later time." N.C. Gen. Stat. § 7B-1109(a) (2005). As discussed in IssueI, supra, the petition to terminate respondent's parental rights was effectively filed on 27 April 2005. The trial court convened its hearing on the petition to terminate respondent's parental rights on 27 June 2005, and concluded the hearing on 7 July 2005. The hearing was convened sixty-one days, and concluded seventy-one days, after the petition was filed. Thus, the trial court held a timely hearing on the petition to terminate respondent's parental rights. This assignment of error is overruled.
We note that respondent attempts to include an argument that the petition to terminate respondent's parental rights was not filed within sixty days of the trial court's order from the permanency planning hearing ceasing reunification efforts and ordering petitioner to file a petition to terminate respondent's parental rights. See N.C. Gen. Stat. § 7B-907(e) (2005) ("If a proceeding to terminate the parental rights of the juvenile's parents is necessary in order to perfect the permanent plan for the juvenile, [a petition shall be filed] to terminate parental rights within 60 calendar days from the date of the permanency planning hearing."). However, respondent has not assigned this issue as error. It is well settled that "[t]he scope of appellate review is limited to those issues presented by assignment of error set out in the record on appeal[; and where] no assignment of error corresponds to the issue presented, this matter is not properly presented for our consideration." State v. Williamson, 333 N.C. 128, 138, 423 S.E.2d 766, 771 (1992) (citing N.C. R. App. P.10(a)). Therefore we will not consider this aspect of respondent's argument.

III
Respondent also argues the trial court erred in denying respondent's motion to recuse Judge Trosch from hearing the action to terminate respondent's parental rights because the record reveals that he had a personal bias concerning respondent and had predetermined the outcome of the hearing. We disagree.
"[A] party has a right to be tried before a judge whose impartiality cannot reasonably be questioned." State v. Fie, 320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987). "[A] judge should disqualify himself/herself in a proceeding in which the judge's impartiality may reasonably be questioned[.]" N.C. Code of Judicial Conduct, Canon (3)(C)(1) (2007). "When a party requests such a recusal by the trial court, the party must demonstrate objectively that grounds for disqualification actually exist." In re Faircloth, 153 N.C. App. 565, 570, 571 S.E.2d 65, 69 (2002) (citation and internal quotation marks omitted). "The requesting party has the burden of showing through substantial evidence that the judge has such a personal bias, prejudice or interest that he would be unable to rule impartially." Id. "The `bias, prejudice or interest' which requires a trial judge to be recused from a trial has reference to the personal disposition or mental attitude of the trial judge, either favorable or unfavorable, toward a party to the action before him." State v. Kennedy, 110 N.C. App. 302, 305, 429 S.E.2d 449, 451 (1993) (citations omitted). Respondent argues Judge Trosch had, in previous hearings on this matter, expressed great disregard for respondent's family, was imputing their dishonesty to respondent, and this would bias his decisions concerning respondent. However, respondent's arguments speak directly to the trial court's stated reasons behind its prior holdings in this matter. "[T]his Court has held that knowledge of evidentiary facts gained by a trial judge from an earlier proceeding does not require disqualification." Faircloth, 153 N.C. App. at 570, 571 S.E.2d at 69; see also In re LaRue, 113 N.C. App. 807, 810, 440 S.E.2d 301, 303 (1994) (holding that a trial judge who had conducted an earlier review hearing, concluded that three children should remain with DSS, and recommended that DSS pursue termination of parental rights, was not subject to disqualification based on personal bias or prejudice in the subsequent termination proceeding). Respondent has failed to show substantial evidence that Judge Trosch had such a personal bias, prejudice or interest that he would be unable to rule impartially. This assignment of error is overruled.

IV
Respondent next argues the trial court erred in terminating respondent's parental rights because there was insufficient clear, cogent, and convincing evidence to support the trial court's findings of fact which also do not support its conclusions of law. We disagree.
Respondent first contends the trial court erred by not specifically indicating the statutory grounds upon which it was terminating respondent's parental rights. However, this Court has held that a "trial court's failure to correctly state in its order the specific statutory ground for termination is harmless error when the findings of fact support a legal conclusion that grounds for termination exist." In re Pope, 144 N.C. App. 32, 38 n.4, 547 S.E.2d 153, 157 n.4 (citation omitted), aff'd per curiam, 354 N.C. 359, 554 S.E.2d 644 (2001). In its order terminating respondent's parental rights, the trial court concluded, "[t]he respondent parents have neglected these juveniles as that term is defined in NCGS § 7B-101(15) in that they have failed to provide proper care, supervision and discipline for the juveniles as more specifically alleged in paragraphs above." The order further stated that respondent's parental rights were terminated pursuant to N.C. Gen. Stat. § 7B-1111(a), which provides in part:
The court may terminate the parental rights upon a finding of one or more of the following:
(1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.
N.C. Gen. Stat. § 7B-1111(a)(1) (2005). Therefore, if the trial court's findings of fact support its legal conclusion that respondent has neglected V.T. and A.T., the trial court's failure to cite N.C. Gen. Stat. § 7B-1111(a)(1) as its grounds to terminate is harmless error. When reviewing an appeal from an order terminating parental rights, our standard of review is whether: (1) there is clear, cogent, and convincing evidence to support the district court's findings of fact; and (2) the findings of fact support the conclusions of law. In re Greene, 152 N.C. App. 410, 415, 568 S.E.2d 634, 637 (2002). "The burden is on the petitioner . . . to prove the facts justifying the termination of parental rights, and the trial court's findings with regard to such facts must be based on clear, cogent and convincing evidence." In re Pierce, 356 N.C. 68, 70, 565 S.E.2d 81, 83 (2002) (internal citations omitted). Clear, cogent, and convincing evidence "is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984) (citation omitted). "If the decision is supported by such evidence, the district court's findings are binding on appeal even if there is evidence to the contrary." In re A.D.L., 169 N.C. App. 701, 710, 612 S.E.2d 639, 645, disc. rev. denied, 359 N.C. 852, 619 S.E.2d 402 (2005). "In a nonjury trial, it is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony." In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citation omitted).
Here, the trial court found as a basis for terminating respondent's parental rights, that she had neglected V.T. and A.T. by failing to provide them proper care, supervision and discipline. Both V.T. and A.T. had previously been adjudicated neglected juveniles and had been placed in the custody of DSS. Further, the trial court had ordered that reasonable efforts to reunify V.T. and A.T. with respondent were to cease and the goal of the case was changed to Termination of Parental Rights/Adoption.
N.C. Gen. Stat. § 7B-101(15) defines a neglected juvenile as one who, inter alia, "does not receive proper care, supervision, or discipline from the juvenile's parent[.]" N.C. Gen. Stat. § 7B-101(15) (2005). "The key to a valid termination of parental rights on neglect grounds where a prior adjudication of neglect is considered is that the court must make an independent determination of whether neglect authorizing the termination of parental rights existed at the time of the hearing." In re McDonald, 72 N.C. App. 234, 241, 324 S.E.2d 847, 851 (1985) (citation omitted). Further, where
a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect[,] . . . because requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible.
In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001) (citation omitted), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002). "[E]vidence of neglect by a parent prior to losing custody of a child  including an adjudication of such neglect  is admissible in subsequent proceedings to terminate parental rights. The trialcourt must also consider any evidence of changed circumstances . . . and the probability of a repetition of neglect." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).
In support of its conclusion that V.T. and A.T. are neglected juveniles the trial court made the following findings of fact:
4. A.T. was originally placed in the custody of Iredell County's Department of Social Services on August 23, 2002 and adjudicated as a neglected juvenile on October 8, 2002. Following that adjudicatory hearing legal custody of the minor child was transferred to Mecklenburg County's Youth and Family Services.
. . .
6. YFS filed a juvenile petition with respect to V.T. after she was born [in April] 2004. That juvenile petition was filed on May 6, 2004 and V.T. was adjudicated as a neglected juvenile on July 20, 2004.
7. YFS entered into a case plan with the respondent mother designed to allow placement of the children back into her custody. As part of her court approved case plan the respondent mother agreed: to obtain and maintain housing and employment; to obtain her GED; to participate in individual and family therapy; and to maintain regular contact with YFS. The respondent mother also agreed to complete a parenting capacity evaluation, and to provide a letter from her doctor with respect to participation in therapy.
8. Max Nunez of the Behavioral Health Center completed the parenting capacity evaluation on [respondent] on August 29, 2003. He found, in part, that [respondent] "would need considerable support and guidance in order to maintain an appropriate lifestyle that is centered on the needs of the children rather than on her needs." He found that her prognosis was guarded.
9. The intervening years have demonstrated why her prognosis was guarded and, in fact, she has not demonstrated the ability to focus on the needs of her children. Since YFS has been involved with [respondent] she has made numerous inappropriate decisions regarding her relationships with men.
. . .
14. The respondent mother has had several residences. The longest residence was a trailer on I-85 Service Road in which she lived until November 2004. She only maintained that residence with financial assistance from YFS or the maternal grandmother. Other rent was paid with the proceeds from a personal injury settlement. She has never paid rent on her own from her own earnings. [Respondent] has not demonstrated self-sufficiency with respect to housing. She has, instead opted for quick fixes.
15. [Respondent] has not maintained regular contact with Youth and Family Services. She had only sporadic contact with the YFS social worker in this case prior to the goal being changed and has had no contacts with YFS since July, 2004.
16. [Respondent] has also not successfully completed individual therapy. She engaged in ongoing therapy with Christine Delaney, of Behavioral Health Center[,] for a period of time. Ms. Delaney initially reported to the Court that [respondent] was successfully participating in therapy.
17. On July 17, 2004, however, Ms. Delaney reported that it had become "glaringly obvious these goals were not accomplished." Ms. Delaney reported that [respondent] had blatantly manipulated and deceived her and then she stated [respondent] had no desire to participate in therapy and found no need for further therapy.
18. Since that time the respondent mother has not provided any evidence that she is engaged in any other form of individual therapy. She testified to going to a few therapy sessions in November 2004 but admitted that she hasn't gone back.
Contrary to respondent's arguments to this Court, these findings of fact are supported by clear, cogent and convincing evidence. Further, the record before this Court shows the trial court considered the changed circumstances and the probability of a repetition of neglect before finding grounds for termination of petitioner's parental rights. See In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (finding evidence of probability of future neglect where "respondent had a history of failing to show a positive response to counseling and educational programs[,] . . . [and] respondent had offered uncertain evidence of stability in her working and living arrangements"); In re Leftwich, 135 N.C. App. 67, 72, 518 S.E.2d 799, 803 (1999) (trial court could properly find a probability of future neglect when respondent mother had not made meaningful progress in improving her lifestyle); In re Davis, 116 N.C. App. 409, 414, 448 S.E.2d 303, 306 (the parents' failure to "obtain[] continued counseling, a stable home, stable employment, and [attend] parenting classes" was sufficient to show a probability that neglect would be repeated if the child were returned to the care of the parents), disc. review denied, 338 N.C. 516, 452 S.E.2d 808 (1994); In re Johnson, 70 N.C. App. 383, 389, 320 S.E.2d 301, 305-06 (1984) (improper care during a trial placement, a failure to make lifestyle changes, and sporadic attendance at counseling sessions constituted evidence of neglect). These assignments of error are overruled.

V
Respondent lastly argues the trial court erred in finding it was in the best interests of the children to terminate respondent's parental rights. Respondent argues the trial court abused its discretion in ignoring the advice of Mr. Nunez, after stating that it had "found him to be extremely insightful and help [sic] for the court," by stopping respondent's visitation with V.T. and A.T. and not terminating her parental rights until a year later, and by terminating respondent's parental rights based on findings of fact that are not supported by clear, cogent, and convincing evidence. We disagree.
"After the trial court has determined grounds exist for termination of parental rights at adjudication, the court is required to issue an order of termination in the dispositional stage, unless it finds the best interests of the child would be to preserve the parent's rights." In re Blackburn, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001) (citation omitted). The trial court's determination that termination of parental rights would be in the best interest of the child is reviewed applying an abuse of discretion standard. In re V.L.B., 168 N.C. App. 679, 684, 608 S.E.2d 787, 791, disc. review denied, 359 N.C. 633, 614 S.E.2d 924 (2005). "Abuse of discretion exists when `the challenged actions are manifestly unsupported by reason.'" Barnes v. Wells, 165 N.C.App. 575, 580, 599 S.E.2d 585, 589 (2004) (quoting Blankenship v. Town & Country Ford, Inc., 155 N.C. App. 161, 165, 574 S.E.2d 132, 134 (2002)).
Respondent has not shown an abuse of discretion by the trial court in concluding it was in the best interests of the minor children to terminate respondent's parental rights. As discussed in Issue IV, supra, the trial court's findings of fact supporting its conclusion that respondent has neglected her minor children are based upon clear, cogent and convincing evidence. Further, the trial court's conclusions are supported by the findings of Mr. Nunez, and the long delay in the hearing to terminate respondent's parental rights was not a result of discretionary actions by the trial court and did not prejudice respondent. After reviewing the evidence presented in the record, briefs, and transcripts before this Court, we hold that the trial court did not abuse its discretion in terminating respondent's parental rights to her minor children, V.T. and A.T. These assignments of error are overruled.
Affirmed.
Judges McGEE and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] Initials are used throughout to protect the identity of the juveniles.