IN RE: A.W.T., L.O.L.
No. COA07-926
Court of Appeals of North Carolina
Filed December 18, 2007
This case not for publication
Susan J. Hall, for respondent-appellant.
J. David Abernathy, for petitioner-appellee.
Melanie Stewart Cranford, for appellee Guardian ad Litem.
ELMORE, Judge.
Della W. (respondent) appeals from a judgment and order of the district court terminating her parental rights to the minor children A.W.T. and L.O.L., who were born in 2000 and 2002. We note that the children's biological father, Billy T., is deceased and not a party to the instant proceeding.
The Catawba County Department of Social Services (DSS) obtained non-secure custody of A.W.T. and L.O.L. on 22 February 2006, and filed a petition alleging that they were neglected and dependent juveniles as defined by N.C. Gen. Stat. § 7B-101(9) and (15) (2005). The district court entered adjudications of dependency and neglect on 18 May 2006, finding that the minor children had been exposed to a series of violent assaults between respondent and her mother, Connie W., in their home in February of 2006. During these incidents, respondent hit Connie W. in the mouth, struck her "with the handle of a knife so hard that the blow took Connie [W.] to her knees and knocked the breath out of her[,]" broke a window in Connie W.'s home, smashed two glass goblets against the wall while the children were barefoot in the room, pulled a phone cord from the wall, "chased Connie W[.] with a butter knife and a steak knife[, and] . . . screamed, cursed, and argued" with Connie W. The court noted that respondent had "an extensive criminal history which includes [s]imple [a]ssault and several convictions for possession of drug paraphernalia and possession of marijuana[,]" and had refused drug screens requested by DSS. The court further found that A.W.T. had fourteen unexcused absences from school and several tardies between 30 August 2005 and 2 February 2006. In November of 2005, a Child Protective Services investigator found respondent living with the children in a home without electricity, relying on an extension cord connected to a neighbor's outlet for power. The court placed the minor children in DSS custody. It ordered respondent to complete a "Family Services Case Plan which includes stable housing and employment, random drugs screens, and [a] complete psychological evaluation[]."
Respondent signed a case plan on 24 March 2006, but did not attend a review hearing held on 6 June 2006. She told DSS that she was working through a temporary agency but had yet to obtain stable housing. In its review order entered 3 July 2006, the district court found that respondent "has not begun to work on the items in her case plan." The court further noted that respondent's "social worker does not have information on how to contact the mother to send for random drug screens." Accordingly, the court suspended respondent's visitation with the minor children until she notified DSS of her whereabouts and submitted to random drug screens. It reiterated its prior order that respondent comply with the terms of her case plan.
The court held a permanency planning hearing on 29 August 2006. Respondent attended the hearing but was incarcerated, having chosen to activate a suspended sentence rather than submit to the conditions of probation. The court construed respondent's decision as evincing an unwillingness "to cooperate with this Court's orders or her case plan." The court found that respondent had done nothing toward the completion of her case plan and had never provided DSS with contact information. In an order entered 12 September 2006, the court determined that further efforts to reunify respondent with the minor children would be futile and changed the permanent placement plan for the children to adoption. DSS filed a motion to terminate respondent's parental rights on 18 October 2006, on grounds that she had neglected the minor children and for a period of six months prior to the filing of the motion had willfully failed to pay a reasonable portion of their cost of care. N.C. Gen. Stat. § 7B-1111(a)(1), (2) (2005). In support of its claim of neglect under N.C. Gen. Stat. § 7B-1111(a)(1), DSS noted the minor children's prior adjudication of neglect and dependency on 9 May 2006, and alleged that respondent had failed to (1) "address or remedy the issues which led to the initial adjudication[,]" (2) "maintain regular visitation and contact with the minor children[,]" (3) "maintain consistent contact with the social worker in order to address the issues which led to the adjudication . . . or to work toward reunification[,]" and (4) "submit to drug screens" on five occasions from 24 March to 24 May 2006.
Following a review on 12 November 2006, the district court entered an order finding that respondent had been released from her incarceration and had contacted DSS to schedule an appointment for 28 November 2006. Inasmuch as respondent had "not made any progress on her case plan[,]" the court found it unlikely that the minor children could be returned to her care within six months. The review order noted the death of the children's father, Billy T., on 22 September 2006.
At the 19 March 2007 termination hearing, DSS Social Worker Tina McRary testified that respondent signed a case plan on 24 March 2006, but did nothing toward its fulfillment before she elected to activate her suspended sentence in July, 2006. Respondent had attended half of her scheduled visitations until 24 May 2006, and brought food, clothing, and "stuff from home" for the children. She also gave the children stuffed animals and candy at Easter. However, respondent failed to attend her psychological evaluation and had refused drug screens at her visitations in February, March, and May of 2006. Because respondent would not provide DSS with contact information, McRary was unable to arrange for drug screens for respondent other than at her visitations. Respondent never reinstated her visitation rights by submitting to random drug screens after the 6 June 2006 review hearing. Social worker Cheryl Brock handled respondent's case while McRary was on maternity leave from 23 October 2006 until 2 January 2007. McRary notified respondent's parents of her maternity leave and provided the necessary information to her clients on her voice mail message. Respondent's father scheduled an appointment for her with Brock on 28 November 2006, for the purpose of discussing her case plan. Respondent did not attend the appointment or contact DSS to reschedule it. Since her release from incarceration, respondent had not provided McRary with her contact information or spoken to McRary. When McRary called respondent's father in an attempt to reach her, he said that "she was not there." McRary asked respondent's father "to have her contact" DSS, but respondent did not do so. In December of 2006, respondent registered for child support and made an initial payment of $105.00. At the time of the hearing, she had made no subsequent support payments and was $210.00 in arrears. Connie W. also delivered Christmas gifts for the children from respondent in December of 2006. At the time of the termination hearing, respondent had yet to obtain a psychological evaluation, attend a single random drug screen, or provide any information to DSS regarding stable employment or housing.
Respondent testified that she was unable to comply with her case plan prior to her incarceration in July of 2006, because shewas dependent upon her father for transportation. She attended visitations with her children when she was able. Prior to July of 2006, respondent lived with friends or her father. She provided both addresses and phone numbers to McRary and left monthly phone messages for her; but McRary "never returned [her] calls to where [she] was staying." Although she failed to submit to random drug screens arranged by McRary, respondent had been subject to monthly drug tests at her scheduled appointments with her probation officer. She had asked her probation officer to forward her test results to McRary. Until July of 2006, respondent worked through a temporary agency, Catawba Valley Staffing. On the advice of her probation officer, she chose to activate and serve her suspended sentence, because her "bond was so high." She had been unaware of McRary's maternity leave and received no information from DSS during her incarceration other than notice of her permanency planning hearing. Since January of 2007, respondent had been working at a laundromat and earned $100.00 per week. Her neighbor drove her to work. Respondent was living in an apartment in Connelly Springs with a monthly rent of $350.00, and had paid $300.00 in child support. She had received "two thousand and something" dollars from a $4,000.00 insurance settlement in November of 2006, but had exhausted these funds on "[r]ent and power" and the security deposit for her apartment. Respondent lacked phone service but "had [her] father call [DSS] a couple of times" on her behalf. Despite living within a block of her father's residence, which she described as "walking distance[,]"respondent had never used his phone to call McRary or to check his answering machine to determine if McRary had returned his calls. Respondent remained dependent upon her father and grandfather for transportation, both of whom were unreliable due to "health problems." She had never asked DSS for transportation assistance. After hearing the parties' evidence, the district court found grounds to terminate respondent's parental rights for neglect under N.C. Gen. Stat. § 7B-1111(a)(1). The court entered findings depicting the events that led to the prior adjudication of neglect and dependency on 18 May 2006, as well as respondent's subsequent failure to cooperate with DSS or to work toward the fulfillment of her case plan. The court noted respondent's failure to contact her social worker and expressly found that "[h]er explanation that she left messages once per month for the worker is not . . . credible." The court determined that respondent's conduct "constitute[d] neglect" of her children and demonstrated "a strong probability that neglect would continue if the children were returned to the home of [respondent] at this time or any time in the foreseeable future."
Following its adjudication under N.C. Gen. Stat. § 7B-1111(a), the district court heard additional testimony and received into evidence the written reports of DSS and the Guardian ad Litem. The court entered a separate dispositional order terminating respondent's parental rights. The court made findings of fact regarding the minor children's developmental delays, their progress in foster care, and their satisfactory transition into an adoptive foster placement. The court found that the children had expressed no interest in further contact with respondent and had a good relationship with their prospective parents. The court concluded that termination of respondent's rights would serve the best interests of the minor children by removing the sole remaining obstacle to their permanent placement plan of adoption.
On appeal, respondent claims that the district "court erred when it concluded that [she] had neglected the children." While purporting to encompass seven of her assignments of error, however, her briefed argument quotes the entirety of the findings of fact and conclusions of law in the adjudicatory order, with several paragraphs of "contested" findings and conclusions highlighted in bold text. Rather than address any individual finding or conclusion with a corresponding argument, respondent offers an alternative version of events, much of which involves assumptions or inferences unsupported by evidence. Moreover, only one paragraph in the body of respondent's argument  listing her gifts to the children  cites the hearing transcript. The subsequent three pages of narrative lack any supporting citations to evidence, either from the transcript or the record on appeal. This constitutes a violation of N.C.R. App. P. 28(b)(6), which requires summaries of evidence to include "appropriate reference to the record on appeal or the transcript of proceedings, or the exhibits." N.C.R. App. P. 28(b)(6) (2007). Accordingly, although respondent has assigned error individually to five enumerated findings in the adjudicatory order, she has failed to present this Court with a properly-briefed argument as to any particular finding. See In re H.L.A.D., __ N.C. App. __, __, 646 S.E.2d 425, 436 (2007) ("[R]espondent does not bring forward her assignments of error with specific arguments challenging these findings of fact."); In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404 (2005) (holding that the respondent abandoned her assignments of error to findings of fact when she "failed to specifically argue in her brief that they were unsupported by evidence"). We therefore deem the district court's findings of fact to be binding for purposes of our review. Id. Accordingly, we must determine whether the court's findings support its conclusion of law that grounds for termination exist under N.C. Gen. Stat. § 7B-1111(a)(1). In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000).
A court may terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), if it finds by clear, cogent, and convincing evidence that the parent has "neglected the juvenile." A child is neglected if he is denied of "proper care, supervision, or discipline" or "lives in an environment injurious to [his] welfare . . . ." N.C. Gen. Stat. § 7B-101(15) (2005). To constitute neglect, the parent's actions must place the child at "substantial risk" of "physical, mental, or emotional impairment." In re Beasley, 147 N.C. App. 399, 403, 555 S.E.2d 643, 646 (2001) (quotations and citations omitted). Where a child has been placed outside of the parent's care for a significant period prior to the hearing, "a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect." In re L.O.K., J.K.W., T.L.W., & T.L.W., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quotations and citation omitted). The court must consider any changed conditions since the children's removal from the home, In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984), but may terminate a parent's rights "if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile[s] were returned to [their] parent[]." In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000) (citation omitted).
Here, the court supported its adjudication of neglect with the following findings:
6. . . . [T]he mother's criminal history includes simple assault and several convictions for possession of drug paraphernalia and possession of marijuana. As of November 28, 2005, [she] was living with the children in a home to which the power had been cut off, and power was being provided from a neighbor's home through an extension cord. Several days after striking the maternal grandmother, Connie W[.], on February 16, 2006, the mother hit Connie W[.] with the handle of a knife when the children were present. On February 20, 2006, the mother broke out a window and smashed two large goblets in the home in which the children were present bare-footed, and chased Connie W[.] with knives. . . . [Respondent] was ordered to obtain stable housing and employment, take random drug screens, and complete a psychological evaluation.
7. The mother did not appear for the [review] hearing on June 6, 2006. She had signed a case plan, but had not begun to work on it. She did not have stable housing and was employed by a temporary agency, and had not given the social worker her contact information. Visitation with the mother was suspended at that time. She was living with friends who had a telephone, but she didn't contact the social worker. Her explanation that she left messages once per month for the worker is not found credible.
8. As of August 29, 2006, the mother had not begun to work on her case plan and had chosen to activate a criminal sentence even though she knew of the things that had been required of her. The court . . . ordered that further efforts with the mother cease. On October 18, 2006, [DSS] filed its motion to terminate parental rights.
9. The mother was released from incarceration in early November of 2006. She did not meet with a child support agent until after her release. She set up an appointment with the social worker scheduled for November 28, 2006, but . . . failed to appear for the appointment. As of this time, she has not completed any of the items which were ordered by the court and are in her case plan.
10. Even as of the time of the hearing on the motion to terminate parental rights, the mother has not had the ordered psychological evaluation, much less comply [sic] with any recommendations for counseling or treatment that such an evaluation might order. She has had one counseling session at Family Net.
11. That the mother took drug screens for her probation officer did not relieve her of the responsibility to take random drug screens as requested by the social worker. The mother knew when her probation meetings were scheduled and that there was a good chance that she would be tested.
12. [DSS] attempted to maintain contact with the mother. A replacement worker was assigned while the regularly assigned worker was on maternity leave. By the time the mother learned of the worker's maternity leave, the regularly assigned worker was back on the case. After the mother's release from incarceration, the mother has not personally contacted her social worker.
13. The mother received more than $2000.00 from her $4,000.00 insurance settlement arising from a car accident. She has paid some money on her child support, but is still one or two months in arrears. After living with her father for a short time, she obtained an apartment. Her rent is $350.00 per month. She earns around $100.00 per week cleaning in a laundromat. As of this time, she has spent all of . . . her settlement funds. She is unable to support herself and the child[ren].
These findings are fully supported by the hearing testimony of McRary and respondent, as well as the prior orders entered in this cause. We note that the district court was entitled to accept McRary's account of events and to disbelieve respondent's competing testimony, in its capacity as the trier of fact. In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397-98 (1996). In light of the prior adjudication of dependency and neglect on 18 May 2006, the court further found "a strong probability that neglect would continue if the children were returned to the home of [respondent] at this time or any time in the foreseeable future."
We hold that the facts found by the district court are sufficient to establish grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(1). At the time of the prior adjudication of neglect, respondent had exposed A.W.T. and L.O.L. to a series of violent acts in the home against their grandmother, placing the children at risk of physical or emotional harm. There was additional evidence that she had failed to tend to the children's educational and developmental needs and lacked appropriate housing. Moreover, respondent's criminal history suggested a problem with substance abuse. Respondent entered into a case plan with DSS on 24 March 2006, but had made no attempt to complete her plan or to remain in contact with DSS regarding the fate of her children at the time of the termination hearing on 19 March 2007. She had not visited with the children since 24 May 2006, having refused the random drug screens that were required for further visitation. At the time of the hearing, respondent had yet to obtain a psychological evaluation or to provide her contact information to McRary. She failed to attend or reschedule a 28 November 2006 appointment with DSS arranged by her father following her release from incarceration. Moreover, although respondent claimed to have part-time work earning $100.00 per week, her monthly rent was $350.00; she had already expended the proceeds of a $4000.00 insurance settlement obtained in November of 2006. Respondent's lack of effort toward correcting the conditions which led to the prior adjudication of neglect was sufficient to support the district court's finding of a probability of further neglect if the children were placed in her care. See In re Davis, 116 N.C. App. 409, 413-14, 448 S.E.2d 303, 306 (1994).
Respondent next claims that the district court abused its discretion by concluding that termination of her parental rights would serve the best interests of the minor children. We note that respondent's brief to this Court fails to present any cognizable challenge to the findings of fact in the dispositional order, notwithstanding her nine corresponding assignments of error in the record on appeal. After articulating the legal standard applicable to dispositions under N.C. Gen. Stat. § 7B-1110, and the abuse of discretion standard of review, respondent again simply quotes the entirety of the findings and conclusions in the dispositional order and highlights in bold text the findings and conclusions with which she disagrees. After more than two pages of single-spaced quotations, she presents a short paragraph of argument unsupported by any citation to the evidence or to any legal authority. The findings are therefore binding on appeal. N.C.R. App. P. 28(b)(6) (2007).
Once the district court finds grounds for termination under N.C. Gen. Stat. § 7B-1111(a), it must select an appropriate disposition based upon an assessment of the best interests of the minor child. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001); N.C. Gen. Stat. § 7B-1110 (2005). The decision to terminate parental rights under N.C. Gen. Stat. § 7B-1110 is reviewed only for manifest abuse of discretion. In re J.A.A. & S.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted).
In claiming an abuse of discretion by the district court, respondent "reincorporate[s]" her argument regarding the adjudication of neglect. Inasmuch as we have affirmed the court's adjudication under N.C. Gen. Stat. § 7B-1111(a)(1), this argument is unavailing. Respondent also notes McRary's testimony that she had interacted appropriately with the children during her visitations and "had a close relationship with the children at that time." As noted in the adjudicatory order, however, respondent had not visited with the children since 24 May 2006.
We find no abuse of discretion by the district court. The dispositional order includes findings on each of the relevant factors set forth in N.C. Gen. Stat. § 7B-1110(a), including the minor children's ages and prospects for adoption; their lack of apparent interest in further contact with respondent; and their good relationship with their adoptive parents. The court noted that termination would further the children's permanent placement plan of adoption. It also took into account the developmental needs of the children, noting L.O.L.'s diagnosis as borderline autistic and A.W.T.'s "delays in school due to his having missed days in school" while in respondent's care. The court found that the children were receiving counseling and speech therapy and had successfully transitioned into an adoptive foster placement with parents who were aware of their special needs. Finally, the court deemed it "unlikely that [respondent] would be a proper custodian even should the current adoptive placement disrupt." The order reflects a reasoned decision by the court properly focused on the children's well-being and need for permanency.
Affirmed.
Judges WYNN and STROUD concur.
Report per Rule 30(e).